No. 100,112

STATE OF KANSAS, *Appellee*, v. ROBERT CHARLES LONGSTAFF, *Appellant*.

(299 P.3d 268)

Opinion filed March 8, 2013.

*Ryan Eddinger*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Natalie A. Chalmers*, assistant attorney general, argued the cause, and *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Robert Longstaff challenges on petition for review the Court of Appeals' decision affirming his convictions for two counts of rape of a child under 14 years of age and one count of aggravated indecent liberties with a child. Longstaff claims error when evidence of his previous conviction for attempted aggravated incest of his daughter was admitted at trial under K.S.A. 60-455. He also challenges the admission of a videotaped interview in which he contends detectives implied he was not being truthful. We affirm his convictions.

## FACTUAL AND PROCEDURAL BACKGROUND

Longstaff was charged with two counts of rape of a child under 14 years of age, with alternative counts of aggravated indecent liberties with a child, and one count of aggravated indecent liberties with a child. The charges involved his three granddaughters. The State's complaint alleged the crimes occurred between May 2004 and January 2005, when Longstaff's adult daughter Lisa was living in Longstaff's house with Lisa's husband and four children: Lisa's two daughters, B.C. and J.C.; Lisa's niece, J.S.C.; and Lisa's son, D.C.

The investigation commenced after Lisa filed a police report in March 2005 claiming her father had raped her at his home 4 months earlier on Thanksgiving. Lisa also disclosed to officers that she had been sexually abused by Longstaff as a child. Lisa was asked by police to question the children living in Longstaff's house whether they had been molested. That led eventually to further inquiry and the charges at issue in this appeal.

The three girls testified at trial that Longstaff touched them, with B.C. pointing out Longstaff to the jury when asked whether anyone had touched her private areas, J.C. testifying that Longstaff touched her "bechina" with his hand while she sat on his lap in a rocking chair, and J.S.C. testifying that Longstaff touched her in areas he should not touch, including her "bechina." At the time of the alleged crimes, B.C. was 8 years old and J.S.C. was 5. The record is unclear whether J.C. was 5 or 6 years old.

Several independent sources also testified about the children's disclosure of sexual abuse. Their grandmother testified that each of the three girls told her Longstaff touched them in a sexual way, though none of the disclosures were specific except for that of J.S.C., who said Longstaff "put his finger where it didn't belong."

A police detective who interviewed each of the girls separately testified at trial that B.C. told him Longstaff touched her "private area" twice with his hand and also rubbed his knee on her "private area" while they were in the living room. The detective said J.C. also told him Longstaff touched her "private area" or vagina, and that J.S.C. did not speak much during her interview and instead demonstrated on a teddy bear what happened by rubbing her hand back and forth on the bear's crotch area.

Helen Swan, an investigator employed by the Kansas Department of Social and Rehabilitation Services, conducted a forensic "Safe Talk" interview in which the girls separately disclosed the abuse in greater detail. At trial, Swan testified that B.C. told her Longstaff touched her vagina with his knee while she sat on his lap once while they were sitting in a computer chair and again when they sat on the couch. Swan testified B.C. said her brother was present during at least one of the incidents.

In J.C.'s "Safe Talk" interview, Swan testified that J.C. described Longstaff as being "straight up" after she got off of his lap, and that J.C. talked about it hurting, about her body being nervous, and about it being bad. Swan also said J.C. told her about penises going inside vaginas, as well as saying that people could use hands and knees to masturbate children.

Swan also testified that J.S.C. told her that Longstaff rubbed her vagina, telling Swan it hurt because Longstaff put his hand or part

of his hand inside her vagina. Swan testified that J.S.C. said Longstaff kissed her with his mouth open and that she saw him naked. J.S.C. stated that this occurred when she sat on Longstaff's lap in the living room.

Several nurses testified about the results of SANE/SART medical examinations administered on the girls. The nurse performing B.C.'s exam testified that B.C. had a scar between her vagina and anus which was consistent with a "mounting injury" caused by a blunt force like a penis stretching and tearing the tissue. The nurse testified that during the exam, B.C. told her that Longstaff touched her on two separate occasions while they were watching television. B.C. said that on both occasions she was sitting on Longstaff's leg, they were both facing the television, and Longstaff rubbed her vagina. According to B.C., Longstaff told her not to tell anybody because he could go to jail. The nurse testified that she concluded the injuries were suggestive of sexual abuse based on the interview and physical examination.

The nurse examining J.C. testified that she observed redness in J.C.'s vagina from blunt force that looked like a recent injury. This nurse determined the injury was caused by something like a finger, penis, bottle, or something else with a rounded edge. The nurse said J.C. told her Longstaff touched her most often in the dining room, and that Longstaff also told her not to tell anyone. J.C. said the touching would occur when her grandmother was taking a nap and when her sister and cousin were in the living room. The nurse concluded J.C.'s exam was nonspecific, meaning there was nothing to definitely indicate there was or was not abuse.

As to J.S.C.'s examination, the performing nurse testified she found redness throughout J.S.C.'s vaginal area that appeared fresh. She said she found an old scar between J.S.C.'s vagina and anus that she determined was the result of tissue ripping from some sort of blunt penetration from possibly a finger, penis, or even a pen. The nurse concluded the scar was consistent with sexual abuse.

Later during trial, the State sought to admit Longstaff's redacted videotaped interview with detectives. Longstaff objected to portions of the video, arguing that the detectives commented about Longstaff's credibility. The district court determined the com-

ments were not improper and admitted the tape. A detective who conducted the interview testified that on the video Longstaff admitted molesting his daughter Lisa when she was younger and had been charged with felony attempted aggravated incest for that crime. Longstaff told detectives he served 5 years' probation for fondling Lisa and attended therapy sessions during that time. The detective also testified that Longstaff said he touched Lisa's breasts and would touch her hair when she would sit on his lap.

The detective also testified that when asked about his grandchildren, Longstaff initially denied inappropriately touching them. Longstaff claimed that whenever the children would sit on his lap, he would move them because of what had happened with Lisa. But later in the interview, the detective continued, Longstaff said he believed something did happen to the children because they would not lie about being abused. He told the detective he could have done something to the children and just did not remember doing it. Longstaff also claimed small children did not excite him anymore because he was "cured," but also admitted he did not trust himself. Longstaff told the detectives, "I must have done it; I just don't remember anything about it."

Before trial, the State requested admission under K.S.A. 60-455 of Longstaff's 1989 conviction for the attempted aggravated incest of Lisa, claiming the evidence showed intent, plan, knowledge, identity, and absence of mistake or accident. Longstaff objected, arguing the conviction was not admissible because his defense was that he did not inappropriately touch the children; so intent, knowledge, and absence of mistake were not material facts in dispute. Longstaff claimed identity also was not at issue because the State only alleged that one person committed the crimes. Longstaff argued the conviction could not be used to show plan because the events were not "strikingly similar." See *State v. Damewood*, 245 Kan. 676, 681-83, 783 P.2d 1249 (1989) (using the term "strikingly similar" to describe a defendant's use of specific language and actions in separate incidents to permit admission of evidence under K.S.A. 60-455). Finally, Longstaff urged the court not to allow the prior crimes evidence because admission of previous sex crimes is highly prejudicial.

The district court overruled the objections and granted the State's motion after determining the evidence was "strongly relevant" to show intent, plan, knowledge, and absence of mistake or accident, and was "seriously probative." Notably, the district court characterized the evidence as "sufficiently similar" to warrant admission and conceded it did not satisfy the applicable "strikingly similar" legal standard from the caselaw. It then found the evidence's probative value outweighed the potential prejudice.

Also during this hearing, the State asked whether Lisa's allegation that Longstaff raped her during Thanksgiving 2004 was admissible. Longstaff's attorney indicated he was going to introduce the allegation, so the subject was dropped. At trial, both sides mentioned the rape allegation without objection.

Regarding the prior conviction, Lisa testified at trial that Longstaff began inappropriately touching her when she was 11 or 12 years old. She stated that Longstaff would touch her breasts and vagina and that this continued until she moved out of the home when she was 15 years old. She said she eventually reported the abuse, and that Longstaff was convicted of attempted aggravated incest. Lisa also testified that most of the touching occurred in the living room while she sat on Longstaff's lap, and that Longstaff would tell her to come sit on his lap before starting to rub her neck, during which he would touch her breasts and vagina—sometimes over her clothes and sometimes under. Lisa said that after it happened a few times, she began telling Longstaff to stop and would jump off his lap.

The jury convicted Longstaff of two counts of rape and one count of aggravated indecent liberties with a child. Longstaff filed a timely notice of appeal to the Court of Appeals.

In those proceedings, Longstaff argued to the Court of Appeals that the district court erred in admitting: (1) K.S.A. 60-455 evidence regarding Longstaff's previous conviction for attempted aggravated incest and Lisa's Thanksgiving 2004 rape allegation; and (2) the portion of Longstaff's videotaped interview in which detectives claimed they could not help Longstaff unless he told them the truth.

The Court of Appeals affirmed Longstaff's convictions. It noted that while the K.S.A. 60-455 evidence was inadmissible to show intent, knowledge, and absence of mistake or accident because Longstaff denied the conduct alleged, the evidence was admissible to show plan. The panel determined "Longstaff's signature act of touching the vagina of each victim—a female under the age of 11 or 12—while sitting on his lap in the living room of his house present[ed] an act 'so strikingly similar in pattern or so distinct in method of operation as to be signature.' " *State v. Longstaff*, No. 100,112, 2010 WL 1253606, at *3 (Kan. App. 2010) (unpublished opinion) (quoting *State v. Prine*, 287 Kan. 713, 735, 200 P.3d 1 [2009]). The panel also acknowledged that Lisa's testimony was prejudicial because Longstaff's sole defense rested on his challenge to the victims' credibility but determined the testimony's probative value outweighed any prejudice. The panel further noted the district court appropriately issued a limiting instruction to the jury regarding Lisa's testimony. *Longstaff*, 2010 WL 1253606, at *4.

As to the claim that it was error to admit evidence of an earlier rape allegation under K.S.A. 60-455, the panel ignored it in its analysis, focusing instead on the prior conviction evidence. The panel also did not address the State's argument that introduction of the 2004 rape allegation was invited error because Longstaff's attorney was the one who declared he would raise it and declined the State's invitation to avoid its admission. Regarding the videotape's introduction, the panel did not reach the merits of Longstaff's argument because Longstaff failed to include the videotape in the record on appeal. *Longstaff*, 2010 WL 1253606, at *4.

Longstaff petitioned this court for review on two questions: (1) whether the Court of Appeals erred in its application of *Prine* in the introduction of Longstaff's conviction for attempted aggravated incest; and (2) whether the district court erred in admitting the videotape without redacting the portions in which "officers claim they cannot help Mr. Longstaff unless he tells the truth."

Parenthetically, we note Longstaff briefly mentioned admission of the earlier rape allegation in his Statement of the Issues in the petition for review but then failed to mention it again and based his arguments entirely on the prior conviction evidence. This is

insufficient to bring this issue before an appellate court. A claim raised in passing without argument or citation to authority is deemed waived. *Frick Farm Properties v. Kansas Dept. of Agriculture*, 289 Kan. 690, 714, 216 P.3d 170 (2009) ("We expect an argument identified in the issues statement of an appellate brief to be developed in a discussion section dedicated to that issue so it can be appropriately considered."); see also Supreme Court Rule 8.03(a)(5)(c) (2011 Kan. Ct. R. Annot. 70) ("Issues not presented in the petition [for review], or fairly included therein, will not be considered by the court."). Our analysis accordingly omits discussion of the earlier rape allegation.

This court's jurisdiction arises under K.S.A. 20-3018(b) (review of a Court of Appeals decision).

## K.S.A. 60-455 EVIDENCE

Longstaff argues the district court committed reversible error when it permitted the State to introduce his prior conviction for attempted aggravated incest because it was not "strikingly similar" to the alleged crimes he was currently facing so as to constitute a signature act. In addition, Longstaff challenges the finding that admission of the prior conviction was harmless.

### *Standard of Review*

In *State v. Torres*, 294 Kan. 135, 139-40, 273 P.3d 729 (2012), we summarized the three-part test district courts must use in determining whether to admit evidence of a defendant's prior crimes or civil wrongs under K.S.A. 60-455, as well as the appropriate standards of appellate review:

"• First, the district court must determine whether the fact to be proven is material, meaning that this fact has some real bearing on the decision in the case. The appellate court reviews this determination independently, without any required deference to the district court.

"• Second, the district court must determine whether the material fact is disputed and, if so, whether the evidence is relevant to prove the disputed material fact. In making this determination, the district court considers whether the evidence has any tendency in reason to prove the disputed material fact. The appellate court reviews this determination only for abuse of discretion.

"• Third, if the fact to be proven was material and the evidence was relevant to prove a disputed material fact, then the district court must determine whether the probative value of the evidence outweighs the potential for undue prejudice against the defendant. The appellate court also reviews this determination only for abuse of discretion.

"If the evidence meets all of these requirements, it is admitted, but in a jury trial the district court must give the jury a limiting instruction telling the jury the specific purpose for which the evidence has been admitted (and reminding them that it may only be considered for that purpose)." 294 Kan. at 139-40; accord *State v. Inkelaar*, 293 Kan. 414, 424, 264 P.3d 81 (2011).

## Discussion

At the time of Longstaff's offenses and trial, K.S.A. 60-455 placed limits on the admission of evidence that a person committed some earlier crime or civil wrong. It stated:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

The Court of Appeals held the evidence was admissible to prove plan, but not admissible to prove intent, knowledge, or absence of mistake or accident. The State did not file a cross-petition for review of the panel's holding, so any arguments regarding intent, knowledge, and absence of mistake or accident are deemed waived. See *State v. Roberts*, 293 Kan. 29, 32-33, 259 P.3d 691 (2011) (State's failure to cross-petition an issue decided in defendant's favor not properly before this court). Consequently, the question is whether the evidence was properly admitted to show plan.

## Plan

Plan evidence may be admitted under two theories. First, prior crimes evidence is admissible to show "there is some direct or causal connection between the earlier conduct and the crimes charged. [Citation omitted.] In such a case, since the two events are causally connected, proving the defendant's involvement in the earlier incident logically tends to establish the defendant's involve-

ment in the charged crime as well." *Torres*, 294 Kan. at 140. In this case, there is no direct or causal connection between Longstaff's prior bad acts involving Lisa and the current allegations.

Under the second theory, 60-455 evidence may be admitted to show plan when "the method of committing the prior act [is] so similar to the method used in the charged crime that it is reasonable to conclude that the same individual committed both acts." 294 Kan. at 140. In *Prine*, we established the standard for determining the level of similarity required under this theory, stating:

"If a defendant's prior bad act is so strikingly similar in pattern or so distinct in method of operation as to be a signature, then it is probative of defendant's plan in the case at bar. If it is not, then the evidence has no probative value on plan and the evidence is irrelevant if offered for that purpose. On appeal, we will review a district judge's decision under the 'signature' standard for an abuse of discretion. [Citation omitted.]" 287 Kan. at 735.

We refined the "strikingly similar" standard in *Prine* because we recognized that without such a rigorous standard, "the line between mere propensity evidence and plan evidence is simply too thin for this court—or any court—to traverse predictably or reliably." 287 Kan. at 735. The "strikingly similar" standard requires more than just some similarities between the crimes.

In *Damewood*, 245 Kan. at 678-83, for example, we upheld the admission of prior crimes evidence because the defendant had a pattern of conduct, including that he would arrange time alone with young teenage boys, meet them for beekeeping activities, and perform similar sexual acts on each. We determined the defendant's past actions were strikingly similar to the actions alleged at trial. And in *State v. Overton*, 279 Kan. 547, 554, 112 P.3d 244 (2005), we held the evidence was strikingly similar when the victims were the same age, the defendant met the victims at school and arranged to be alone with them at school, the defendant hired the victims as babysitters so he could be alone with them, and the defendant raped each victim in similar locations in his home.

In *Prine*, the victims were approximately the same age and the same gender. But despite those similarities, we held the crimes were not strikingly similar because the specific sex acts alleged by each victim were different. 287 Kan. at 735-36. We reached a sim-

ilar conclusion in *Torres*. There, both victims were 14 or under, the defendant had sexual relations with both victims, and the defendant provided financial support to both victims' mothers. We determined the crimes were not strikingly similar because there were too many differences. We noted the defendant's relationship with the victims began in different ways, the victims were different ages when the abuse began, the relationship with each victim ended in different ways, and the defendant's financial support to the victims' mothers arose in different ways. 294 Kan. at 141-42.

As the Court of Appeals observed in addressing Longstaff's arguments, there are similarities between the aggravated attempted incest conviction involving Lisa and the allegations at this trial. Lisa and the three victims here are females, Longstaff touched the vagina of each victim, and the touching occurred while the victims sat on his lap in the living room of his house. *Longstaff*, 2010 WL 1253606, at *3-4.

But there are also significant differences. Most notably, the victims were different ages. Lisa's abuse started when she was 11 or 12 years old, while in the current case one victim was 8 and the other two victims were 5 or 6 years old when the abuse occurred. Also, the presence of another person during the abuse was inconsistent. Lisa testified that no one else was home when Longstaff abused her, while B.C. told Swan her brother was present when at least one of the incidents occurred, and J.C. told the nurse the abuse happened when her grandma, sister, and cousin were home. Finally, Longstaff told B.C. and J.C. not to tell anyone about the touching. Lisa, on the other hand, did not remember Longstaff instructing her not to tell.

While we agree there are similarities between the crimes, these similarities do not rise to the level of being so strikingly similar in pattern, or so distinct in method of operation, as to be a signature as required under *Prine*. As we noted in *Torres*, for crimes to be strikingly similar, the similarities "must be something more than the similarities common to nearly all sexual-abuse cases." 294 Kan. at 141. On appeal, we review a district court's decision under the "signature" standard for an abuse of discretion. *Prine*, 287 Kan. at 735. Judicial discretion is abused if

"judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

In this case, the district court based its decision on an incorrect legal standard when it found the prior conviction was "substantially similar" with the crimes charged. Our caselaw instead requires using a "strikingly similar" standard, which the facts of this case do not meet. Accordingly, the district court abused its discretion in admitting evidence of Longstaff's previous conviction for attempted aggravated incest.

## Harmless Error

Our holding that the district court erred in admitting the K.S.A. 60-455 evidence does not automatically entitle Longstaff to a new trial. We must also determine whether its wrongful admission was harmless error. See *Torres*, 294 Kan. at 143-44. The harmless error standard is defined in K.S.A. 60-261:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

We have held that the harmless error analysis under K.S.A. 60-261 requires us to determine whether there is a reasonable probability that the error will or did affect the outcome of the trial in light of the entire record. See *Ward*, 292 Kan. at 569-70 (noting the more stringent test when the error infringes on rights protected by the United States Constitution). Under this analysis, we are concerned only with undue or unfair prejudice. See *Prine*, 287 Kan. at 736. The burden of demonstrating harmlessness under K.S.A. 60-261 is on the party benefitting from the error. *State v. McCullough*, 293 Kan. 970, Syl. ¶ 9, 270 P.3d 1142 (2012).

In *Prine*, we conducted a harmless error analysis to determine whether the defendant's case was unduly prejudiced by the improper admission of K.S.A. 60-455 plan evidence. We held the error warranted reversal because there was no physical evidence corroborating the victim's testimony and the State's case "hinged entirely" on the credibility of that testimony, which was significantly bolstered by the inadmissible testimony about the prior crimes. 287 Kan. at 736.

In Longstaff's case, Lisa's testimony about the abuse that led to his conviction for aggravated attempted incest also bolstered the child victims' credibility. But unlike *Prine*, there was physical evidence to support that testimony. The jury heard that medical examinations of B.C. and J.S.C. revealed both girls had injuries between their anus and vagina, which the examiner determined were suggestive of sexual abuse. And although the medical examiner did not definitively conclude that J.C. had injuries suggestive of sexual abuse, the jury heard that J.C. had injuries caused by a blunt object such as a finger or penis. Additionally, Longstaff's own admissions in his interview corroborated the victims' allegations. Longstaff told the detectives he did not trust himself around children and believed something happened to the children because they would not lie about being abused. He also told the detectives, "I must have done it, I just don't remember anything about it." Longstaff's own admissions strengthened the State's case against him.

Longstaff is correct that prior sex-crimes evidence can be extremely prejudicial. But in light of the physical evidence presented at trial, Longstaff's own admissions, the victims' consistent testimony, and the district court's limiting jury instruction, we hold the improper admission of the attempted aggravated incest evidence was harmless.

This analysis makes it unnecessary to consider the State's argument that the admission of the prior conviction was harmless due to posttrial amendments to K.S.A. 60-455 contained in L. 2009, ch. 103, sec. 12.

## VIDEOTAPED INTERVIEW

In his second issue, Longstaff argues the district court erred in

admitting a portion of a videotaped interview in which detectives claimed they could not help him unless he told the truth. Longstaff claims the detectives were commenting on his credibility and that admission of these statements violated *State v. Elnicki*, 279 Kan. 47, Syl. ¶¶ 2, 3, 105 P.3d 1222 (2005). The Court of Appeals declined to reach the merits of Longstaff's claim because he failed to include the videotape in the record on appeal. *Longstaff*, 2010 WL 1253606, at *4.

In his petition for review to this court, Longstaff failed to address the panel's dispositive procedural holding that he failed to include the video in the appellate record. He simply repeated his earlier arguments made to the Court of Appeals, which that court did not reach due to the procedural impediment. One month before argument to this court, Longstaff filed a motion to add the videotape to the record on appeal.

But Longstaff's failure to challenge the panel's dispositive procedural holding in his petition for review is fatal to his efforts now to have this court address on review an argument that the district court erred in admitting the videotape. See *State v. Allen*, 293 Kan. 793, 794-96, 268 P.3d 1198 (2012); Supreme Court Rule 8.03(a)(5)(c) (2011 Kan. Ct. R. Annot. 70) ("Issues not presented in the petition [for review], or fairly included therein, will not be considered by the court."); Supreme Court Rule 8.03(g)(1) (2011 Kan. Ct. R. Annot. 72) ("If review is not limited, the issues before the Supreme Court include all issues properly before the Court of Appeals that the petition for review or cross-petition allege were decided erroneously by the Court of Appeals.").

Consequently, we cannot reach the merits of Longstaff's argument on the underlying issue about the tape's admissibility at trial. His motion to add the videotape to the record on appeal is moot.

The judgment of the Court of Appeals is affirmed.