NOT DESIGNATED FOR PUBLICATION

No. 111,958

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

ESAUL RAMIREZ-FERNANDES,
*Appellant.*

MEMORANDUM OPINION

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed November 20, 2015. Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Chadwick J. Taylor*, district attorney, *Jodi Litfin* and *Kyle Edelman*, assistant district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., BRUNS, J., and ROBERT W. FAIRCHILD, District Judge, assigned.

*Per Curiam*: Esaul Ramirez-Fernandes appeals his convictions of one count of rape and one count of contributing to a child's misconduct or deprivation. He raises two issues on appeal. First, Ramirez-Fernandes argues that the district court erred in denying his motion to exclude evidence that the district court found was admissible under K.S.A. 2014 Supp. 60-455. Second, he argues that his due process rights were violated when his attorney argued against his pro se motion for new trial. Finding no reversible error, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

The charges arose out of events that occurred on February 12, 2013. C.A., who was 15 years old at the time, was in the 10th grade and attended Topeka High School. When she arrived at school that morning, she went to the bathroom and met two friends, Yoana and Diana. The three girls decided to skip school that day. They decided that they would go to the apartment of Ramirez-Fernandes, who C.A. knew as Luis. Yoana contacted Ramirez-Fernandes and asked him to come to the school to pick up the girls.

About 30-40 minutes later, Ramirez-Fernandes and another man named Edwardo came to the school in a car to pick up the girls. Edwardo was driving. First, they stopped at a gas station and bought some junk food. Next, they stopped at a liquor store. C.A., Ramirez-Fernandes, and Edwardo went inside and purchased Blueberry UV vodka and 6 or 12 cans of beer. After they left the liquor store, they went to Ramirez-Fernandes' apartment. Everyone went into the apartment and went into Ramirez-Fernandes' bedroom and started drinking and listening to music. C.A. remembered taking at least three shots of vodka and drinking half a can of beer. The last thing C.A. remembered was being in the bedroom with everyone dancing on the bed.

The next thing C.A. remembered was waking up on the floor of the bedroom on her back; her shirt and bra were on but her underwear and pants had been removed. Ramirez-Fernandes was on top of her. C.A. felt a sharp pain in her vagina being caused by Ramirez-Fernandes' penis. C.A. wanted him to get off of her, but she could not move, talk, or get him off because she felt paralyzed. C.A. did not see or hear anyone else in the apartment and blacked out.

C.A. woke up again, but she was on the bed. This time she had clothes on, but they were different clothes than what she had worn to the apartment. C.A. and Ramirez-Fernandes were the only people in the bedroom. C.A. started crying and went downstairs

2

where she saw Edwardo. Edwardo and Ramirez-Fernandes drove C.A. home. C.A. later took a shower and noticed she had vomit in her hair.

C.A. went to school the next morning. When she arrived at school, she went to the bathroom and met Yoana and Diana. Diana noticed that C.A. was not talking and seemed "down" and asked her what was going on. C.A. told Diana that Ramirez-Fernandes had raped her, and Diana told her to go to campus police. Yoana and Diana walked C.A. to the school resource officer, and C.A. told the officer what had happened, when it happened, and where it happened. The school resource officer notified the police.

Steve Adkins, a detective with the Topeka Police Department was assigned to investigate the case. Adkins directed the school resource officer to take C.A. to the hospital to submit to a SANE/SART examination. Adkins met C.A. at the hospital, and he and the SANE nurse interviewed her about what had happened. During the interview, C.A. said the man who raped her was "Luis" Fernandes and he worked at El Charro's. Adkins later determined that "Luis" Fernandes who worked at El Charro's was the defendant, Ramirez-Fernandes.

Adkins interviewed Ramirez-Fernandes through a certified interpreter. Initially, he denied having sexual relations with C.A. Later, he admitted that he had sexual relations with her because she challenged his manhood. He also admitted that he knew C.A. was drunk and vomiting prior to engaging in sexual relations with her. During the interview Adkins was able to determine that Ramirez-Fernandes was 28 years old. After the interview, Adkins arrested Ramirez-Fernandes.

On February 19, 2013, the State charged Ramirez-Fernandes with one count of rape and one count of contributing to a child's misconduct or deprivation. After subsequent amendments, Ramirez-Fernandes ultimately was charged with one count of rape where the victim was incapable of consent because of the effect of alcohol or drugs

3

and one count of contributing to a child's misconduct or deprivation. As an alternative to the rape charge, Ramirez-Fernandes was charged with aggravated indecent liberties with a child based on having sexual intercourse with a 14-15-year-old child.

Ramirez-Fernandes later filed a motion in limine to exclude certain evidence at trial. Specifically, the motion requested the district court to limit the testimony of Robert N. Otto, who was an employee at the liquor store where Ramirez-Fernandes had purchased the liquor on February 12, 2013, to prevent Otto from disclosing that Ramirez-Fernandes had previously patronized the liquor store "with young girls." The State opposed Ramirez-Fernandes' request because he had denied to police that he went to the liquor store with C.A., and Otto's proposed testimony was not a crime or civil wrong under K.S.A. 60-455 as there was nothing illegal about buying alcohol with a young girl. After holding a hearing, the district court ultimately ruled that Otto's testimony was admissible under K.S.A. 60-455 in order to prove plan or preparation.

The district court held a jury trial on June 24-26, 2013. At trial, C.A. and Adkins testified. The State also presented evidence that seminal fluid was found in two spots on the underwear C.A. reported wearing on the day of the offense. The seminal fluid produced a single profile that matched Ramirez-Fernandes' DNA. The frequency of finding this profile would be 1 in 27 quadrillion for Southeast Hispanics or Southwestern Hispanics. There was also DNA evidence on the underwear of a second unknown male.

Otto also testified at the trial. He testified that on February 12, 2013, Ramirez-Fernandez came into the liquor store with two young Hispanic girls and purchased UV vodka and a 12-pack of Bud Light. He also testified that Ramirez-Fernandes had come to the liquor store on prior occasions with "other people" in the car. However, Otto testified that he could never get a close look at the people in the car.

4

Ramirez-Fernandes did not testify at trial. In the closing argument, his counsel argued there was "reasonable doubt" that Ramirez-Fernandes was guilty of rape. It is unclear from the argument whether Ramirez-Fernandes was denying sexual contact with C.A., or whether he was claiming there was consent. The jury convicted Ramirez-Fernandes of rape and contributing to the misconduct of a minor. On November 8, 2013, the district court sentenced Ramirez-Fernandes to 155 months' imprisonment for his rape conviction and 12 months in the county jail for the conviction of contributing to the misconduct of a minor.

On November 18, 2013, Ramirez-Fernandes filed a pro se motion for a new trial based on newly discovered evidence alleging that he had received a letter after the trial showing his innocence. Ramirez-Fernandes attached the letter, which was in Spanish, and an English translation, to his motion. In the letter, Jennifer Calderon, Ramirez-Fernandes' cousin, stated that she had spoken with a person named "Cucho" and Cucho had spoken with Edwardo, who was with Ramirez-Fernandes on the day of the offense. According to the letter, Edwardo had told Cucho that he had sex with C.A.

The district court held a hearing on Ramirez-Fernandes' motion on January 22, 2014. Ramirez-Fernandes' attorney for the hearing, Napolean Crews, informed the district court that Ramirez-Fernandes did not want to present testimony and Crews would argue the motion. Crews' argument in regards to the newly discovered evidence was as follows:

> "In terms of arguing the motion, I believe that the motion and supplement sets forth everything that has happened. I think that the Court has everything before it to make a determination as to whether this is newly-discovered evidence or not. I did have a discussion with my client when I was first appointed in this case. I explained my feelings about the evidence, that the evidence does not—the evidence simply said that another person may have had sex, one person says he didn't, doesn't explain the sperm that I believe the record shows that belonged to him that was on her panties. So we had a discussion regarding about that. That's all I'll say about that particular issue."

The State requested that the district court deny the motion. First, the State argued that the letter was unauthenticated because Calderon was not present to testify and, even if she were there to testify, Edwardo's admission would be inadmissible hearsay. Second, the State argued that even if Edwardo testified to his admission in the letter, it would not change the evidence presented at trial because Ramirez-Fernandes' DNA was found on C.A.'s underwear along with the DNA of a second unknown male. Thus, it was always the State's position that two men had sex with C.A. on the day of the offense.

The district court denied the motion because there was not testimony before the court, the statements in the letter constituted double hearsay, and even if the evidence was admissible, it was consistent with the evidence presented at trial that the DNA of a second unknown male was found on C.A.'s underwear. Thus, the new evidence would not have changed the result of the trial. Ramirez-Fernandes filed a timely notice of appeal.

MOTION IN LIMINE

Ramirez-Fernandes first argues that the district court erred in denying his motion in limine to exclude Otto's testimony that Ramirez-Fernandes previously had purchased alcohol at the liquor store with young girls. He argues that this evidence is barred under K.S.A. 60-455 because it is evidence of a past crime or civil wrong and was not relevant to prove a material fact. The State first argues that Otto's testimony does not fall under K.S.A. 60-455 because it is not a crime or civil wrong to purchase alcohol from a liquor store in the presence of others. In the alternative, the State argues that the district court correctly determined that the evidence was relevant to establish plan or preparation. Finally, the State argues that any error in the admission of the evidence was harmless.

In reviewing a district court's ruling on a motion in limine, an appellate court must first determine the relevance of the challenged evidence, *i.e.*, whether the evidence is probative and material. The district court's determination that the

6

evidence is probative is viewed for an abuse of discretion; the district court's determination that the evidence is material is subject to de novo review. *State v. Frierson*, 298 Kan. 1005, 1015, 319 P.3d 515 (2014) (quoting *State v. Shadden*, 290 Kan. 803, 817-818, 235 P.3d 436 [2010]).

Here, the district court found that the challenged evidence was admissible under K.S.A. 60-455. An appellate court's rubric for evaluating the admissibility of K.S.A. 60-455 evidence requires that (1) the evidence be relevant to prove a material fact; (2) the material fact be disputed; and (3) the probative value of the evidence not be substantially outweighed by the risk of undue prejudice. See *State v. Smith*, 296 Kan. 111, 123, 293 P.3d 669 (2012).

At trial, Otto specifically testified that on February 12, 2013, Ramirez-Fernandes came into the liquor store with two young Hispanic girls and purchased UV vodka and a 12-pack of Bud Light. This testimony was relevant because it corroborated C.A.'s testimony and refuted Ramirez-Fernandes' denial to the police that he went to the liquor store with C.A. Ramirez-Fernandes does not challenge Otto's testimony about what he observed on February 12, 2013.

Ramirez-Fernandes had filed a motion in limine to prevent Otto from testifying that Ramirez-Fernandes previously had patronized the liquor store "with young girls." Ramirez-Fernandes argued that such testimony was inadmissible because it was evidence that Ramirez-Fernandes committed the crime of contributing to a child's misconduct on prior occasions. The district court admitted the evidence under K.S.A. 60-455 in order to prove plan or preparation.

However, it is significant to note that at trial, Otto never testified that Ramirez-Fernandes had previously patronized the liquor store "with young girls." Otto only testified that on previous occasions, Ramirez-Fernandes came to the

7

liquor store with other people in the car. But Otto testified that he could never get a close look at the people in the car. The fact that Ramirez-Fernandes came to the liquor store on prior occasions to purchase alcohol and other people were in the car is not evidence of a crime or civil wrong, so this was not evidence that was admissible under K.S.A. 60-455. Moreover, the evidence was not relevant to the charges against Ramirez-Fernandes. Thus, we conclude the district court erred in admitting this evidence at trial over Ramirez-Fernandes' objection.

However, as the State argues, any error in the admission of Otto's testimony is subject to the harmless error standard set forth in K.S.A. 2014 Supp. 60-261 which provides:

> "Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

To determine whether an error in the admission of evidence was harmless, an appellate court must determine whether there is a reasonable probability that the error affected the outcome of the trial in light of the entire record. *State v. Longstaff*, 296 Kan. 884, 895, 299 P.3d 268 (2013). The party that benefits from the error, in this case the State, has the burden of demonstrating the error was harmless. 296 Kan. at 895.

C.A. testified at trial that she was raped by Ramirez-Fernandes on February 12, 2013. C.A.'s testimony was consistent with her interviews with the police, and her testimony also was corroborated by other witnesses. Moreover, the DNA evidence proved beyond any reasonable doubt that Ramirez-Fernandes had sexual contact with C.A. Ramirez-Fernandes offered no evidence at trial to refute the allegations, and in closing argument his counsel merely argued that there was

8

"reasonable doubt" that Ramirez-Fernandes was guilty of rape. We conclude that any error in the admission of Otto's testimony was harmless and did not affect the outcome of the trial in light of the entire record.

## MOTION FOR NEW TRIAL

Next, Ramirez-Fernandes argues that his due process rights were violated when his attorney argued against his pro se motion for new trial based on newly discovered evidence. Ramirez-Fernandes claims that as a result of this violation, his convictions should be reversed or, in the alternative, the case must be remanded for a new hearing with different counsel on the motion for new trial. The State argues that Ramirez-Fernandes' attorney was not deficient because he did not argue against the motion for new trial; he only informed the court that he had discussed the motion with Ramirez-Fernandes and advised his client that he did not think the letter from Ramirez-Fernandes' cousin would have any impact in light of the evidence at trial

Whether a defendant has received ineffective assistance of counsel under the Sixth Amendment is a question of law over which appellate review is unlimited. *Robertson v. State*, 288 Kan. 217, 225, 201 P.3d 691 (2009). The inquiry involves two steps. First, an appellate court must determine whether counsel's conduct was deficient. 288 Kan. at 225 (quoting *Haddock v. State*, 282 Kan. 475, 512-13, 146 P.3d 187 [2006]). Second, if counsel's conduct is determined to be deficient, an appellate court must determine whether that deficiency prejudiced the defendant. 288 Kan. at 225.

Ramirez-Fernandes argues that this issue is governed by *State v. Hemphill*, 286 Kan. 583, 186 P.3d 777 (2008). In *Hemphill*, counsel was appointed to represent the defendant on his motion to withdraw his plea. At the hearing, counsel told the court he did not believe the defendant's motion had any merit. Counsel requested the district court to allow the defendant to make his own argument on the motion. On appeal, our Supreme

9

Court found that by arguing against his client's motion, counsel completely abandoned his role as an advocate for his client resulting in ineffective assistance of counsel. 286 Kan. at 594-95.

As the State asserts in its brief, *Hemphill* is not directly on point. Here, at the hearing on the motion for new trial, Ramirez-Fernandes' counsel informed the district court that he had advised his client that he did not think the letter from the cousin would have any impact in light of the evidence at trial. Counsel did not ask the district court to deny the motion, but he certainly did not argue in favor of the motion.

Ultimately, we do not need to determine whether counsel's conduct was constitutionally deficient. In order for a defendant to be entitled to relief for his attorney's deficient performance, the defendant must show prejudice. *Robertson*, 288 Kan. at 225. For the defendant to be prejudiced, the court must find that there is a reasonable probability that but for counsel's deficient performance, the result of the proceedings would have been different. 288 Kan. at 225. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" 288 Kan. at 225.

Ramirez-Fernandes' motion for new trial was based on an unauthenticated letter from his cousin. The letter was inadmissible because the cousin was not present to testify and the statements in the letter constituted double hearsay. Moreover, the substance of the letter would not have helped Ramirez-Fernandes because the letter only established that Edwardo also had sex with C.A. It had always been the State's position at trial based on the DNA evidence that a second unknown male had sexual contact with C.A. There is no reasonable probability that the new evidence would have changed the result of the trial; thus, Ramirez-Fernandes was not prejudiced by his counsel's failure to argue in favor of the motion. We conclude that Ramirez-Fernandes' due process rights were not violated and the district court did not err in denying his pro se motion for new trial.

10

Affirmed.