NOT DESIGNATED FOR PUBLICATION

No. 118,635

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN BRIAN CRAWFORD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; PAULA B. MARTIN, judge. Opinion filed January 4, 2019. Affirmed.

*Kathleen Ambrosio*, of Ambrosio & Ambrosio, Chtd, of Topeka, for appellant.

*Andrew D. Bauch* and *Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., STANDRIDGE, J., and WALKER, S.J.

PER CURIAM: John Brian Crawford appeals following his convictions for aggravated battery, aggravated assault of a law enforcement officer, and interference with law enforcement by obstructing official duty. Crawford argues: (1) The district court erred in responding to a jury question, (2) the district court erred in allowing the State to introduce certain evidence at trial, and (3) the cumulative effect of these alleged errors deprived him of a fair trial. For the reasons stated below, we affirm.

1

Shortly after 9 p.m. on August 2, 2015, Douglas County Sheriff's Master Deputy Brad Clover was on patrol near Lone Star Lake when he observed a visibly upset woman walking down the road wearing "essentially underwear." Clover stopped and spoke to the woman, who identified herself as Vickie Carlson. She advised that Crawford, her boyfriend, had thrown her out of his house. Carlson said that she lived with Crawford and that her clothes and cell phone were at the house. Carlson wanted to go stay with her children, but dispatch was unable to contact her family. Clover then offered to drive Carlson to Crawford's house and accompany her on a "civil standby" while she picked up her belongings.

On the way to Crawford's house, Carlson informed Deputy Clover that Crawford kept guns there. Clover was familiar with the area due to a previous incident where gunshots had been fired nearby. As a result, Clover had a heightened awareness as he approached Crawford's house. Upon arrival, Clover had Carlson stay by his car while he went to the front door and rang the doorbell. After Crawford answered the door and stepped outside, the deputy explained why he was there and said that Carlson wanted to go inside and get some of her things. Crawford agreed that Carlson could come inside to retrieve her belongings and said that she was welcome to stay. Around this time, Deputy David Hardy arrived to assist with the situation and joined Clover by the front door. Carlson indicated that she just wanted to get her things and leave, so Clover told her to go inside and get any essential items. Crawford denied Clover's request to accompany Carlson inside, so Clover informed Crawford that he would need to remain outside with the deputies.

As Carlson gathered her belongings and searched for her phone, Crawford became upset and started to enter the house. Deputy Clover told Crawford that if he went inside, the deputies would go in with him. According to the deputies, Crawford tried to close the

door on Clover and said, "'You're not coming in my fucking house.'" Concerned that the situation would escalate, Clover put his foot inside the doorway to keep the door from closing and pushed the door open with his arm. As Clover pushed the door open, he claimed that Crawford pulled out a pistol and pointed it directly at his chest. In response, the deputies drew their firearms on Crawford and asked him to put down his gun at least three times before he complied. After Clover retrieved the gun, he attempted to arrest Crawford, who ran away to the back of the house. The deputies chased Crawford into the kitchen, where he resisted arrest until they pinned him to the floor. Clover suffered an elbow injury at some point during the struggle. Later, the deputies asked Carlson if there were any other guns in the house. She led them to a bedroom, where the deputies discovered two additional firearms.

The State charged Crawford with one count each of aggravated battery, aggravated assault of a law enforcement officer, interference with law enforcement by obstructing official duty, and domestic battery.

At trial, Crawford testified in his defense. Crawford denied kicking Carlson out of the house. Crawford said that after the deputies arrived, he only went inside the house to help Carlson look for her phone and he did not understand why Clover needed to follow him. Crawford denied using any profanity and claimed that Clover came inside with no warning. Crawford said that he carried a gun to the door with him for safety because there was a lot of traffic by the lake. Crawford testified that after the deputies entered the house, he pulled the gun out in order to let them know that he was carrying a gun. He denied ever pointing his gun at the deputies. Crawford claimed he told Clover that there was nothing in the gun's chamber, but the deputies immediately pointed their guns at him. Crawford also claimed that he put his gun down the first time he heard the order to do so. According to Crawford, Clover then "bum-rushed the door" and reached for Crawford's gun. Claiming he was frightened by Clover's "football stance" and believing that Clover was about to lunge for him, Crawford ran toward the back door in the kitchen. Crawford

denied resisting arrest, instead claiming that Clover tried to injure him after pinning him down.

The jury found Crawford guilty of aggravated battery, aggravated assault of a law enforcement officer, and interference with law enforcement by obstructing official duty. The jury found Crawford not guilty of domestic battery. The district court sentenced Crawford to a controlling term of 20 months' imprisonment. Crawford timely appeals.

ANALYSIS

On appeal, Crawford alleges the district court erred (1) in responding to a jury question and (2) in allowing the State to introduce certain evidence at trial. Crawford also claims that the cumulative effect of these two alleged errors deprived him of a fair trial. We address each of Crawford's allegations in turn.

1. *Response to jury question*

In his first claim of error on appeal, Crawford argues the district court improperly answered a question from the jury. In order to provide context to this claim of error, we must provide some additional facts.

During cross-examination of Deputy Clover, the following exchange occurred:

"Q.    (By [defense counsel]) What legal authority did you have to put your foot in the door and to open it back up?
"A.    I was there to preserve the peace.
"Q.    Okay. You weren't investigating a criminal matter, were you?
"A.    I was not.
"Q.    Right. So you had no authority to enter the residence."

4

The prosecutor objected to this line of questioning, citing a lack of relevance. During a subsequent bench conference, the prosecutor noted that Crawford had not asserted a claim of self-defense but the questions posed by defense counsel improperly suggested to the jury that Crawford "was somehow justified in pulling his firearm on a deputy." In response, defense counsel claimed the questioning was relevant because one of the elements of obstruction is whether the officer was acting within the scope of his official duties as a law enforcement officer, so it was necessary to determine whether Clover was acting within the scope of his official duties when he put his foot in the door and shoved it open. For support, defense counsel cited *State v. Peterman*, 42 Kan. App. 2d 761, 216 P.3d 710 (2009). The district court overruled the prosecutor's objection.

Thereafter, defense counsel went on to question Deputy Clover about his legal authority to enter the house. Clover responded that he was there to accompany Carlson and preserve the peace while she collected her belongings. In addition, defense counsel asked Clover why he requested permission from Crawford to go inside the house and whether it was possible that he caught Crawford off guard when he pushed the door open. Clover stated that he asked for Crawford's permission out of respect and to let him know what was going on. Clover said that he did not know whether he caught Crawford off guard when he went inside.

During closing argument, defense counsel argued that the State had failed to meet its burden to prove the elements of aggravated assault of a law enforcement officer and interference with law enforcement by obstructing official duty, because Clover had no legal authority to enter Crawford's house and therefore had exceeded his official duties.

During deliberations, the jury submitted the following question to the district court: "Can the officer enter the home as part of his official duties?" In debating the proper response to the jury's question, the parties discussed this court's opinion in *Peterman*, 42 Kan. App. 2d 761. In that case, the State charged the owner of a house with

5

aggravated assault of a law enforcement officer after the officer entered the house without lawful authority and the homeowner pointed a rifle at the officer. The district court suppressed evidence of the assault, finding that the officer's entry was unauthorized. 42 Kan. App. 2d at 761-62. A panel of this court reversed and reinstated the charges on grounds that "'[e]vidence of a separate, independent crime initiated against police officers in their presence after an illegal entry or arrest will not be suppressed under the Fourth Amendment [to the United States Constitution].'" 42 Kan. App. 2d at 766. The panel held that regardless of whether the officer had consent to enter the house, the trier of fact should be allowed to determine whether the homeowner's actions were reasonable. 42 Kan. App. 2d at 766.

Defense counsel alleged that Deputy Clover had no legal basis to enter the home. He argued that under *Peterman*, the jury should be able to consider the legality of Clover's entry in determining the reasonableness of Crawford's actions. Thereafter, the district court submitted to the jury the following written answer:

> "You should not concern yourself with the legality of the entry. Even if the entry was illegal, you may still consider evidence of any separate, independent crime(s) committed after entry. It is for you to determine, however, whether the defendant's actions were reasonable after entry was made."

On appeal, Crawford argues the district court's answer to the jury's question was a misstatement of the law. K.S.A. 2017 Supp. 22-3420(d) provides that "[t]he court shall respond to all questions from a deliberating jury in open court or in writing." Kansas appellate courts apply a two-prong test when reviewing a district court's response to a jury question. First, we conduct a de novo review to determine if the district court provided an erroneous response to the jury's question. Second, we review the sufficiency or propriety of the district court's response for an abuse of discretion. *State v. Jones*, 41 Kan. App. 2d 714, 722, 205 P.3d 779 (2009). A judicial action constitutes an abuse of

6

discretion if (1) no reasonable person would take the view adopted by the district court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). The party asserting the district court abused its discretion bears the burden of showing such abuse. *State v. Stafford*, 296 Kan. 25, 45, 290 P.3d 562 (2012).

Crawford submits two arguments in support of his claim that the district court's instruction to the jury in response to its question was erroneous as a matter of law. First, Crawford argues the legality of Deputy Clover's entry into the house is an essential element of aggravated assault of a law enforcement officer and interference with law enforcement by obstructing official duty in that both charges required the jury to find that the officer was engaged in the performance of an official duty. Crawford claims that if the State failed to prove that Clover had legal authority to enter Crawford's house, then the jury would have had to find that Clover was acting outside the scope of his official duty and that Crawford was entitled to be acquitted on both charges. Second, Crawford argues that under the *Peterman* case discussed during the bench conference at trial, the jury should have been able to consider the legality of Clover's entry into the house in deciding whether Crawford's actions after entry were reasonable. Crawford suggests that by instructing the jury to ignore the legality of Clover's entry, the court's response contradicted its earlier ruling allowing defense counsel to question Clover about his authority to enter the home based on the holding in *Peterman*.

To properly address Crawford's arguments, we begin with the relevant portions of the instructions provided to the jury on the two charges identified by Crawford.

"Instruction No. 11

"The defendant is charged with interference with law enforcement by obstructing official duty. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

7

"1. Brad Clover was discharging an official duty, namely, the arrest of John Crawford.

"2. The defendant knowingly obstructed, resisted, or opposed Brad Clover in discharging that official duty.

"3. The act of the defendant substantially hindered or increased the burden of the officer in the performance of the officer's official duty.

"4. At the time[,] the defendant knew or should have known that Brad Clover was a law enforcement officer.

"5. This act occurred on or about the 2nd day of August, 2015, in Douglas County, Kansas."


"Instruction No. 12

"The defendant is charged with aggravated assault of a law enforcement officer. The defendant pleads not guilty.

"To establish this charge, each of the following clams must be proved:

"1. The defendant knowingly placed Brad Clover in reasonable apprehension of immediate bodily harm.

"2. Brad Clover was a uniformed or properly identified county law enforcement officer.

"3. Brad Clover was engaged in the performance of his duty.

"4. The defendant did so with a deadly weapon.

"5. This act occurred on or about the 2nd day of August, 2015, in Douglas County, Kansas.

"No bodily contact is necessary."


A review of these instructions leads us to conclude that the legality of Deputy Clover's entry into the house is not an essential element of the aggravated assault of a law enforcement officer charge or the interference with law enforcement by obstructing official duty charge. Instead, the district court instructed the jury that the State was required to prove Clover was performing an official law enforcement duty at the time of the alleged crimes. "The question of whether a police officer is engaged in the performance of his [or her] duties is not dependent upon whether his [or her] actions are

8

reasonable or probable in retrospect." *State v. Trujillo*, 225 Kan. 320, 322, 590 P.2d 1027 (1979). The facts presented at trial in this case establish that, even if Clover lacked authority to enter the home because Clover did not have Crawford's permission, Clover remained engaged in the performance of his duties as a law enforcement officer during the entire incident. Clover testified that he had accompanied Carlson to Crawford's house for a civil standby and to "keep the peace" while she collected her belongings. Clover said that when Crawford went into the house after Carlson, he stopped the door from closing because he worried that the situation between Crawford and Carlson could become violent. As Clover pushed the door open, Crawford pulled out a pistol and pointed it directly at Clover's chest. The deputies drew their firearms on Crawford in response and repeatedly asked Crawford to put down his gun. When Crawford finally put the gun down, Clover attempted to arrest Crawford but Crawford ran into the back of the house. The deputies chased Crawford into the kitchen, where he resisted arrest until they pinned him to the floor.

The evidence presented at trial establishes that, even if Clover lacked legal authority to put his foot in the front door to keep it from closing or to follow Crawford into the house to effectuate an arrest, Clover remained engaged in the performance of his duties as a law enforcement officer during the entire incident. Thus, the district court's response to the jury's question properly informed the jury that it need not consider the legality of Clover's entry into the home with respect to the crimes at issue. See *Trujillo*, 225 Kan. at 322.

Crawford's suggestion that the district court's response to the jury's question contradicted an earlier ruling lacks support in the record. Following the prosecutor's objection to questions about the legality of Deputy Clover's entry, defense counsel cited *Peterman* for support and discussed its factual similarities to Crawford's case. In making its ruling, the district court noted that *Peterman* was factually distinguishable in some respects and did not appear to rely on the case at all when it overruled the prosecutor's

9

objection and allowed defense counsel to question Clover about his legal authority to enter the home. The parties did not argue, and the district court did not address, the relevant legal holding set forth in *Peterman* at that time. Only later, in debating the district court's response to the jury's question, did the parties discuss *Peterman*'s holding that the legality of law enforcement's entry is a separate and distinct consideration from (1) whether other crimes are committed in the presence of law enforcement and (2) whether a homeowner's response to law enforcement's intrusion is reasonable. Although the district court instructed the jury that it should not concern itself with the legality of the entry, the court also instructed that, even if the entry was illegal, it was up to the jury to determine whether the defendant's actions were reasonable after entry was made. See 42 Kan. App. 2d at 766. The district court's response was proper.

Finally, Crawford alternatively argues that the district court should have declined to answer the jury's question and instead referred it back to the jury instructions. But when a jury submits a question during deliberations, the district court must make an attempt to provide a meaningful response. See K.S.A. 2017 Supp. 22-3420(d); *State v. Boyd*, 257 Kan. 82, 88, 891 P.2d 358 (1995) (mandatory duty of district court is breached "when the trial court makes no attempt to provide a meaningful response to an appropriate request or gives an erroneous response"). The jury's question concerned the legality of Deputy Clover's entry into the house and how that entry affected his status as a law enforcement officer. The district court is prohibited by statute from simply referring the jury back to the original instructions without first attempting to provide a meaningful response. In this case, the district court provided a proper and meaningful response.

2. *Admissibility of evidence*

When reviewing the admissibility of evidence, appellate courts follow a two-step analysis. First, we must determine whether the evidence is relevant. Generally, all evidence is admissible if relevant. K.S.A. 60-407(f). Relevant evidence is defined as

evidence that has "'any tendency in reason to prove any material fact.'" *State v. Page*, 303 Kan. 548, 550, 363 P.3d 391 (2015) (quoting K.S.A. 60-401[b]). This definition encompasses two elements: whether the evidence is material and whether the evidence is probative. Evidence is material when the fact it supports is disputed and is significant under the substantive law of the case. *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016). This court reviews the materiality of evidence de novo. *Page*, 303 Kan. at 550. Evidence is probative if it "'furnishes, establishes, or contributes toward proof.'" *McCormick*, 305 Kan. at 47. This court reviews the district court's decision regarding the probative value of evidence for abuse of discretion. 305 Kan. at 47.

Even if evidence is relevant, a district court may exclude it if the district court determines the probative value of the evidence is outweighed by its potential for producing undue prejudice. K.S.A. 60-445. We review this aspect of the test for abuse of discretion. *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013). Finally, the erroneous admission of evidence is subject to review for harmless error under K.S.A. 2017 Supp. 60-261. *State v. Longstaff*, 296 Kan. 884, 895, 299 P.3d 268 (2013).

Having set forth the standard of proof and the standard of review, we turn to Crawford's claims on appeal. Crawford argues that the district court erred by allowing the State to introduce into evidence (a) Deputy Hardy's testimony that he heard gunshots fired on a prior occasion near Crawford's home and (b) photographs of two guns discovered in Crawford's bedroom after he was taken into police custody.

a. *Evidence of shots fired near Crawford's home*

Deputy Hardy testified on direct examination that prior to August 2, 2015, he had responded to a noise complaint in the area near Crawford's home. At this point, defense counsel requested a bench conference, at which counsel asked the prosecutor to verify that he was not trying to introduce evidence of prior arrests or prior crimes in the area.

11

The prosecutor explained that Hardy had responded to a noise complaint for loud music in the area a couple of months before the current incident. Hardy rang Crawford's doorbell but nobody answered. As Hardy was leaving, Hardy heard gunshots fired in the general area. The prosecutor noted that shooting a gun in the county was not illegal but that he was introducing this evidence to show that the deputies were aware of Crawford's address and that they had a somewhat heightened awareness of the area. In response, defense counsel argued that the evidence was not relevant and was more prejudicial than probative. The district court ruled that the State could introduce the testimony, given the State had a duty to prove reasonable apprehension of immediate bodily harm as an element of aggravated assault of a law enforcement officer. But the court ordered the prosecutor to make clear that shooting guns was not in itself illegal.

After the bench conference, Deputy Hardy testified about the prior noise complaint as detailed above. Hardy admitted that it was not illegal to fire a gun in the county but stated that the incident caused him to make a mental note of the location. Hardy said that he had discussed the incident with Deputy Clover, who was also on patrol in the area that night. On cross-examination, Hardy agreed that the Fraternal Order of Police shooting range was in the general vicinity of Crawford's house. But Hardy also testified that when he heard the gunshots, he believed that they had been fired from somewhere closer to Crawford's house than the shooting range. Clover later testified that Hardy had told him about the incident and that it was in the back of his mind when he approached Crawford's house on August 2, 2015.

The district court ruled that Deputy Hardy's testimony about the prior noise complaint was admissible because the State was required to prove that Crawford had knowingly placed Deputy Clover in reasonable apprehension of immediate bodily harm as an element of aggravated assault of a law enforcement officer. See K.S.A. 2017 Supp. 21-5412(a). On appeal, Crawford claims that evidence of the prior noise complaint was not relevant to the allegation that he committed the crime of aggravated assault of a law

12

enforcement officer on August 2, 2015. Crawford argues that evidence relating to Clover's state of mind was not relevant, given that Clover did not respond to the noise complaint himself but only heard the information second-hand from Hardy. Crawford asserts that the testimony merely showed that Hardy "heard a gunshot near a sleeping homeowner's residence located near a firing range," an event so insignificant that Hardy did not investigate the source of the gunshot.

Contrary to Crawford's argument, evidence of Deputy Clover's state of mind was relevant because "the crime of aggravated assault is based on both a subjective apprehension of the victim, i.e., whether the victim had an apprehension of immediate bodily harm, as well as an objective determination that the apprehension was reasonable." *State v. Angle*, No. 116,152, 2017 WL 4216161, at *3 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. 988 (2018). Clover's knowledge of gunshots being fired near Crawford's home on a prior occasion was both probative and material to the disputed issue of whether Clover experienced the reasonable apprehension of immediate bodily harm and whether this apprehension was objectively reasonable. As a result, this evidence was relevant.

Crawford also suggests that evidence of the prior noise complaint was rendered irrelevant by the nearby shooting range. But this argument goes to the weight of Deputy Hardy's testimony and not its admissibility. Indeed, defense counsel elicited testimony about the proximity of the shooting range during cross-examination and the jury had the opportunity to weigh Hardy's testimony against this evidence.

Even if evidence is relevant, a district court has discretion to exclude it when the court finds its probative value is outweighed by its potential for producing undue prejudice. See K.S.A. 60-445. An appellate court reviews any such determination for an abuse of discretion. See *Lowrance*, 298 Kan. at 291. Crawford argues that admission of

13

Hardy's speculative testimony about shots being fired near his home was inflammatory and resulted in undue prejudice.

But there is nothing in the record to support Crawford's claim of prejudice. The State presented no evidence that Crawford fired the gunshots; the evidence merely showed that the gunshots could have been fired near his house. And the jury heard testimony that the gunshots could have been fired at the shooting range instead. Even if the jury did infer that Crawford fired the gunshots, both deputies testified that it was not illegal for someone to fire a gun in the county. Accordingly, the challenged testimony was not unduly prejudicial. See K.S.A. 60-445.

b. *Photographs of guns discovered in Crawford's bedroom*

During Carlson's direct examination, the prosecutor questioned her about whether one of the deputies had asked her whether there were any other firearms inside Crawford's home. Defense counsel objected based on relevance. Outside the presence of the jury, the prosecutor explained that he anticipated the deputies were going to testify that after Crawford fled, they chased him because they did not know whether there were other weapons in the house. The prosecutor stated that after Crawford's arrest, the deputies asked Carlson whether there were other guns in the house. Carlson led the deputies to the master bedroom, where they discovered a rifle and a shotgun. The prosecutor then sought to introduce into evidence photographs of the rifle and shotgun as State's Exhibits 10 and 11. The prosecutor argued that the exhibits were relevant because they validated the deputies' concerns about the presence of additional weapons. Based on this explanation, the district court overruled defense counsel's objection and allowed the State to introduce Exhibits 10 and 11 into evidence. Carlson then identified the guns depicted in Exhibits 10 and 11 as the guns she had shown to the deputies. Deputy Hardy also identified Exhibits 10 and 11 as depicting the rifle and shotgun found in Crawford's

14

bedroom. The deputies both later testified they were concerned that Crawford had other guns because they were taught that when there is one firearm, there are usually more.

Crawford argues that Exhibits 10 and 11 were irrelevant because they did not establish any of the elements that the State was required to prove, i.e., the presence of legal firearms inside the house had no relationship to the charged crimes. The State responds that the later discovery of the firearms was relevant in demonstrating the validity of the deputies' concerns about their safety and the reasonableness of their actions.

As earlier stated, evidence is material when the fact it supports is in dispute and is significant under the substantive law of the case. *McCormick*, 305 Kan. at 47. Evidence that Crawford had other guns in the house did not support any fact in dispute. Likewise, the State was not required to prove that the deputies had valid concerns about the presence of other guns inside the house. Simply stated, the photographs of Crawford's guns were neither material nor probative with respect to the elements of the charged crimes: aggravated battery, aggravated assault of a law enforcement officer, interference with law enforcement by obstructing official duty, or domestic battery. Because Exhibits 10 and 11 were not relevant under K.S.A. 60-401(b), the district court erred by admitting the photographs into evidence.

But this error does not automatically require reversal. The erroneous admission of evidence is reviewed for harmless error under K.S.A. 2017 Supp. 60-261. *State v. Perez*, 306 Kan. 655, 666, 396 P.3d 78 (2017). This analysis requires us to determine "whether there is a reasonable probability that the error affected the outcome of the trial in light of the entire record." 306 Kan. at 666. The State, as the party benefitting from the error, bears the burden of proving it harmless under this standard. See *State v. Logsdon*, 304 Kan. 3, 39, 371 P.3d 836 (2016).

15

The district court's error in admitting photographs of Crawford's guns was harmless because it had no reasonable probability of contributing to the outcome of the trial in light of the entire record. As argued by the State, the evidence presented against Crawford at trial was strong. The deputies each testified in great detail about Crawford pointing a gun directly at Deputy Clover, Crawford's attempts to resist and evade arrest, and Clover's injury resulting from Crawford's actions. Despite Crawford's claim that he was prejudiced by the inference that he is a dangerous person due to the ready availability of guns in his home, there is no evidence in the record suggesting that Crawford possessed the guns illegally or that he had used the guns for criminal activity or any other improper purpose. Notably, the jury found Crawford guilty of three of the four charges filed against him. This indicates that the jury properly weighed the evidence presented and considered the credibility of the witnesses without being adversely influenced by the photographs of Crawford's guns. Under these circumstances, there is no reasonable probability that the district court's error in admitting Exhibits 10 and 11 into evidence affected the trial's outcome. As a result, the error was harmless.

3. *Cumulative error*

Finally, Crawford argues that the cumulative effect of the errors alleged above deprived him of his constitutional right to a fair trial. When a party argues that the cumulative impact of alleged errors is so great that they result in an unfair trial, this court aggregates all errors and, even if those errors individually would be considered harmless, analyzes whether their cumulative effect is so great that they collectively cannot be determined to be harmless. *State v. King*, 297 Kan. 955, 986, 305 P.3d 641 (2013). In undertaking such an analysis, this court reviews the entire record and exercises unlimited review. *State v. Sean*, 306 Kan. 963, 993, 399 P.3d 168 (2017).

Crawford's only successful argument on appeal is that the district court erred by admitting Exhibits 10 and 11 into evidence. That error was harmless and did not warrant

reversal. A single error cannot constitute cumulative error. See *State v. Solis*, 305 Kan. 55, 71, 378 P.3d 532 (2016). Accordingly, Crawford has failed to show that relief is warranted.

Affirmed.