NOT DESIGNATED FOR PUBLICATION

No. 115,567

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SAMUEL LEE DARTEZ II,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; DAVID L. STUTZMAN, judge. Opinion filed July 21, 2017. Affirmed.

*Kimberly Streit Vogelsberg*, of Kansas Appellate Defender Office, for appellant, and *Samuel Lee Dartez, II*, appellant pro se.

*Jeremy J. Crist*, assistant county attorney, *Barry R. Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., LEBEN and BRUNS, JJ.

*Per Curiam*:  Samuel Lee Dartez appeals from his convictions for attempted first-degree murder and battery. On appeal, Dartez contends that the district court erred by admitting prior bad acts evidence, improperly instructing the jury, entering an unworkable restitution order, and improperly calculating his sentence. In addition, Dartez asserts prosecutorial error and juror misconduct. Based on our review of the record, however, we do not find any reversible error. Thus, we affirm.

1

Dartez and Stephanie Holden were in a relationship and lived together in Riley County, Kansas. Two children were born out of their relationship. In June of 2014, Holden told Dartez that she wanted to end the relationship. However, Holden and the children were not able to move out until July. During the interim, the couple continued to share an apartment.

On July 3, 2014, Holden contacted Riley County Police to report an argument with Dartez that lasted most of the day. Evidently, Dartez yelled at Holden and demanded to see her cellphone. He also physically searched her to "find if she had hidden anything on her." In addition, Dartez tackled Holden while looking for her phone. Holden also reported that Dartez choked and molested her. At some point during the day, Dartez locked her out of their shared apartment.

On July 6, 2014, police received an anonymous call reporting that someone had shouted "help" in the area near the apartment that Holden and Dartez shared. Police officers responded, and Holden told the officers that Dartez had initially stopped her from leaving the apartment to go to work. According to Holden, Dartez took her book bag and shoved her several times. Eventually, he shoved her out of the front door and locked it.

The next day, the police were again called to the apartment shared by Holden and Dartez. On this occasion, Dartez reported that Holden had stolen a vehicle that the two evidently shared. It is unclear from the record who actually owned the vehicle. However, Holden told the officers that she helped pay for it and was using the vehicle to move items from the shared apartment.

The next incident came on July 27, 2014, after Holden had moved out of the apartment. On that day, Dartez picked Holden up from work. Instead of taking her to a

friend's house—where she was staying—Dartez took her back to the apartment they previously shared. According to Holden, Dartez was driving erratically and at one point, she got out of the vehicle while it was stopped at a stop sign. She later got back into the car. At some point, Dartez shoved Holden out of the vehicle, and she ran to the police.

The following day, Holden attempted to pick up the couple's children from Dartez' apartment. It appears that Dartez physically blocked Holden and said she could not take the children. He then prevented her from leaving. Holden described the month of July 2014 as "hell" for her because of the incidents involving Dartez.

On October 29, 2014, Aleta Hill, one of Holden's coworkers, contacted police, on Holden's request, about an incident involving Holden and Dartez during the day and night of October 28, 2014. During the day, Dartez repeatedly called Holden. That night, Dartez insisted on coming over to Holden's apartment. Holden indicated that she opened the door and asked Dartez to leave. He refused and yelled at Holden. Evidently, Holden agreed to let Dartez in to look at her cellphone. Once inside, Dartez cornered Holden in the kitchen and began smashing her head into the floor. He also choked her while she attempted to defend herself. Eventually, one of the children woke up, and Dartez left the apartment. The following day, it appears that Dartez attempted to break into Holden's apartment but was unsuccessful.

On November 13, 2014, Holden's day started peacefully. However, when she got out of the shower that morning, Dartez was in her apartment. According to Holden, Dartez was angry and followed her as she walked out of the apartment. Dartez told Holden that he wanted a ride, and she refused. As Holden walked away, Dartez followed her with his hands in his pockets. Holden was scared by Dartez' behavior and started to run.

Dartez caught up to Holden and forced her to the ground. Dartez began beating Holden with his fists and yelling at her. Karen Kemp, an eyewitness who happened to be near the scene, shouted at him to stop, but Dartez continued beating Holden. Dartez then pulled out a knife and began stabbing at Holden. Holden attempted to defend herself using her hands. Fortunately, the knife broke and Dartez stopped his attack. Holden was able to get up and fled the scene with Kemp.

As a result of the attack, Holden suffered lacerations to her face. She also had lacerations and tendon damage in her hands. In addition, she had a puncture wound to her neck. Holden remained in the hospital for 2 days and incurred $25,000 in medical expenses for the injuries she suffered during the November 13 incident.

The State initially filed two cases against Dartez. On November 10, 2014, in case 14 CR 635, the State charged Dartez with one count of aggravated battery for the October 28 incident. Three days later, in case 14 CR 638, the State charged Dartez with attempted first-degree murder—in violation of K.S.A. 2014 Supp. 21-5402 and 21-5301, an off-grid person felony—for the November 13 incident. The State subsequently amended the attempted first-degree murder complaint down to a severity level 1 person felony.

On June 1, 2015, the State filed a motion to determine the admissibility of evidence pursuant to K.S.A. 2014 Supp. 60-455. Specifically, the State sought to have evidence of the July and October domestic incidents introduced at trial to demonstrate motive and a discordant relationship between Dartez and Holden. Moreover, on June 11, 2015, the State filed an amended information in 14 CR 638, which classified the attempted first-degree murder charge as a domestic violence offense. Thereafter, the State moved to consolidate the two criminal cases.

On August 25, 2015, the district court held a hearing on the pending pretrial motions. Dartez did not object to the State's motion to consolidate. He did, however,

4

object to the admission of evidence regarding the prior domestic incidents. Several weeks later, the district court ordered the two cases consolidated. In addition, the district court granted the State's motion for permission to introduce the July and October domestic incidents, finding that such evidence was relevant and probative as to the issues of motive, intent, and a discordant relationship.

On October 9, 2015, the State filed a second amended information that incorporated both the aggravated battery charge and the attempted first-degree murder charge into one pleading. Furthermore, the second amended information classified both charges as domestic violence offenses. Thereafter, the case proceeded to a jury trial that commenced on November 16, 2015.

At trial, the State presented the testimony of 14 witness, including Holden, Kemp, and Hill. In addition, the State also admitted more than 50 exhibits into evidence. After the State rested, Dartez exercised his right not to testify, and he did not present any evidence at trial.

On November 19, 2015, the jury convicted Dartez of attempted first-degree murder and battery, the lesser-included offense of the aggravated battery charge. The jury agreed that both of these crimes committed by Dartez were acts of domestic violence. Subsequently, Dartez filed a motion for a new trial as well as a motion for a dispositional and/or durational downward departure.

At a hearing held on January 29, 2016, the district court denied Dartez' motions. The district court ultimately sentenced Dartez to 272 months in prison with 36 months of postrelease supervision on the attempted first-degree murder conviction. The court further sentenced Dartez to 6 months on the battery conviction, to run concurrently with his primary sentence. Finally, the district court ordered Dartez to pay $25,000 in restitution.

ANALYSIS

*Prior Bad Acts Evidence*

On appeal, Dartez first contends that the district court erred by admitting evidence of prior incidents of domestic violence pursuant to K.S.A. 2014 Supp. 60-455. When reviewing the admissibility of K.S.A. 2014 Supp. 60-455 evidence, we apply a three-part test: (1) we conduct a *de novo* review to determine whether the fact to be proven is material—meaning that it has some real bearing on the case; (2) we apply an abuse of discretion standard of review to determine whether the material fact is disputed and, if so, whether the evidence is relevant to prove the disputed fact; and (3) we apply an abuse of discretion standard of review to determine whether the probative value of the evidence outweighs the potential for undue prejudice against the defendant. See *State v. Longstaff*, 296 Kan. 884, 891-92, 299 P.3d 268 (2013). "If the evidence meets all of these requirements, it is admitted, but in a jury trial the district court must give the jury a limiting instruction telling the jury the specific purpose for which the evidence has been admitted (and reminding them that it may only be considered for that purpose)." 296 Kan. at 892 (quoting *State v. Torres*, 294 Kan. 135, 139-40, 273 P.3d 729 [2012]).

In this case, Dartez only attacks the district court's action on the second and third prongs of the test. First, Dartez argues that the district court erred in determining evidence of his prior domestic incidents was relevant to prove motive, intent, or a discordant relationship. Next, Dartez argues the evidence was more prejudicial than probative. As indicated above, we review both of these prongs under an abuse of discretion standard. A district court abuses its discretion if (1) no reasonable person would take the view adopted by the district court; (2) the decision is based on an error of law; or (3) the decision is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

6

Under K.S.A. 2014 Supp. 60-455(b), prior bad acts can be used to prove a defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, or lack of mistake or accident. In addition, evidence of prior acts of domestic violence or marital dispute involving a couple may be admitted to demonstrate the nature of the relationship of the parties. See *State v. Gunby*, 282 Kan. 39, 51, 144 P.3d 647 (2006) (describing the history of admitting discordant marital relationship evidence when a person is accused of killing his or her spouse); see also *State v. Vasquez*, 287 Kan. 40, 53, 194 P.3d 563 (2008) (evidence of a prior incident of domestic violence committed by the accused against a murder victim was admissible); *State v. Maiyo*, No. 108,136, 2013 WL 5303525, at *2 (Kan. App. 2013) (unpublished opinion), *rev. denied* 299 Kan. 1272 (2014).

Our Supreme Court has recognized that motive is relevant to help explain to a jury why a person committed the crime. *State v. Carapezza*, 286 Kan. 992, 999, 191 P.3d 256 (2008). Here, as in *Vasquez*, the prior acts of domestic violence demonstrate that Dartez was unwilling to allow Holden to leave the relationship and that the violence continued to escalate. The incidents of domestic violence were close in time to the attempted murder. Furthermore, Dartez' closing argument rested, in part, on the suggestion that he had no motive to try to kill Holden. Thus, we find that the motive for Dartez' actions was disputed at trial and that evidence of prior acts of domestic violence committed by him against Holden was relevant to proving that Dartez had a motive to harm her.

In *Gunby*, our Supreme Court held that testimony regarding a prior violent incident between the defendant and the victim was admissible as evidence of intent in his murder trial. 282 Kan. at 44-45, 49. Similarly, the October 28, 2014 incident in which Dartez choked Holden was relevant to proving that he had intent to do harm to her. Moreover, a review of the record reveals that the parties disputed the nature of the relationship between Dartez and Holden. In fact, Dartez' defense relied—in part—on the

7

argument that Holden was also an aggressor. Thus, evidence of the nature of the relationship between the parties was relevant to refute that defense.

Notwithstanding, Dartez argues the district court abused its discretion by determining the evidence of his prior bad acts was more probative than prejudicial. We disagree because the prior incidents of domestic violence involved Dartez attacking Holden, they were committed relatively close in time to the charged crimes, and they are similar to the crimes charged in this case. Accordingly, we find the evidence of the prior relationship between Dartez and Holden—as well as the evidence of the history of domestic violence—to be highly probative to the issues of motive and intent. Furthermore, evidence of the prior domestic incidents was highly probative as to whether the jury should categorize the October 28 and November 13 incidents as domestic violence offenses.

We conclude that the evidence regarding prior acts of domestic violence committed by Dartez against Holden to be material, relevant, and probative. In addition, we conclude that the probative value of this evidence outweighed the potential for producing undue prejudice. Moreover, the district court reduced any prejudice resulting from the admission of this evidence by giving a limiting instruction. Specifically, the district court instructed the jury that the evidence could "be considered solely for the purpose of proving the defendant's motive, intent, and the relationship of the parties." Thus, we find the district court did not abuse its discretion in admitting prior bad acts evidence in this case.

*Prosecutorial Error*

Dartez also contends that the prosecutor committed error in his closing argument. In *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016), our Supreme Court identified a two-step process that we must apply to evaluate claims of prosecutorial error:

"These two steps can and should be simply described as error and prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* [565 U.S. 1221] (2012). We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' [Citation omitted.]" *Sherman*, 305 Kan. at 109.

During closing, the prosecutor argued to the jury that Dartez "stopped stabbing and cutting Stephanie Holden because the knife broke." Dartez argues that there is no testimony in the record indicating that the reason he stopped stabbing Holden was because his knife broke. Regardless, based on our review of the record, we find that this was a reasonable inference from the evidence the parties presented at trial. In particular, there was evidence presented that Dartez held Holden on the ground, that he started stabbing at her with the knife, that at some point the knife broke, and the attacked stopped shortly thereafter.

In addition, Dartez argues that the prosecutor committed error by asking a rhetorical question during closing argument. Specifically, he asked why Dartez took "the knife out of the pocket on the side of his vehicle and [stuck] it in his pocket that morning on November 13, 2014?" According to Dartez, there is no evidence in the record about

9

when he began carrying the knife used in the attack. Again, we find the prosecutor's argument to be a reasonable inference based on the evidence presented at trial.

Holden testified that she saw a knife in the car sometime prior to the attack. In fact, she even took a picture of the knife, and the State introduced the photograph into evidence. Furthermore, Holden testified that the knife in the picture looked like the knife Dartez used to attack her on November 13. Holden also testified that Dartez had his hands in his pockets prior to the attack. Finally, a police investigator testified that the knife used in the attack was never recovered, but that a knife sheath was recovered. While there may be no direct testimony on this issue, it is reasonable to infer from the evidence that at some point prior to arriving at Holden's apartment, Dartez removed the knife from his car, put it into his pocket, and used it to attack Holden. Thus, we conclude that the prosecutor did not commit error during closing arguments.

*Reasonable Doubt Instruction*

Dartez next contends that the burden of proof instruction given to the jury by the district court prohibited the jury's power of nullification. Because Dartez did not object to the instruction given at trial, we review this issue under a clearly erroneous standard. *State v. Barber*, 302 Kan. 367, 377, 353 P.3d 1108 (2015). When determining whether an instruction is clearly erroneous, we engage in a two-step analysis. First, we consider whether any error occurred, which requires employing an unlimited review of the entire record to determine whether the instruction was legally and factually appropriate. Second, if we find error, we must then determine whether we are firmly convinced that the jury would have reached a different verdict without the error. *State v. Clay*, 300 Kan. 401, 408, 329 P.3d 484 (2014). The party claiming that an instruction is clearly erroneous has the burden to establish the degree of prejudice necessary for reversal. *State v. Williams*, 295 Kan. 506, Syl. ¶¶ 4, 5, 286 P.3d 195 (2012).

As found by this court in *Silvers v. State*, 38 Kan. App. 2d 886, 888, 173 P.3d 1167, *rev. denied* 286 Kan. 1180 (2008), jury nullification is:

> "'A jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness.' [Citation omitted.]"

Of course, nullification is always a possibility because there is nothing prohibiting a jury from acquitting a defendant if it desires to do so. However, our Supreme Court has expressly disapproved of the use of a jury nullification instruction that tells jurors that they "may do what they think is fair" or that they are entitled to act upon their conscientious feelings as to a fair outcome and to acquit the defendant if they believed justice required such a result. See *State v. Naputi*, 293 Kan. 55, Syl. ¶ 4, 65-67, 260 P.3d 86 (2011); *State v. McClanahan*, 212 Kan. 208, Syl. ¶ 3, 510 P.2d 153 (1973). On the other hand, jury instructions cannot forbid a jury from exercising its power of nullification nor can they "compel a jury to convict, even if it finds all elements proved beyond a reasonable doubt." *State v. Smith-Parker*, 301 Kan. 132, 164, 340 P.3d 485 (2014).

Here, the district court properly instructed the jury about its role and the burden of proof. In particular, the district court's instructions regarding the function and duty of a jury are consistent with K.S.A. 22-3403(3), which states: "When the trial is to a jury, questions of law shall be decided by the court and issues of fact shall be determined by the jury." Likewise, the district court's instructions are consistent with K.S.A. 2014 Supp. 60-247(d), which provides that "[t]he jurors must swear or affirm to try the case conscientiously and return a verdict according to the law and the evidence."

11

Furthermore, numerous opinions of this court have rejected the argument that the use of the word "should" in the burden of proof instruction found at PIK Crim. 4th 51.010 (2012 Supp.) somehow prohibits a jury from exercising the power of nullification. See *State v. Allen*, 52 Kan. App. 2d 729, 733-36, 372 P.3d 432 (2016); see also *State v. Cuellar*, No. 112,535, 2016 WL 1614037, at *1-2 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. __ (April 17, 2017); *State v. Hastings*, No. 112,222, 2016 WL 852857, at *4-5 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. __ (April 17, 2017); *State v. Singleton*, No. 112,997, 2016 WL 368083, at *4-6 (Kan. App.) (unpublished opinion), *rev. denied* 305 Kan. 1257 (2016); *State v. Jones*, No. 111,386, 2015 WL 4716235, at *5-6 (Kan. App. 2015) (unpublished opinion), *rev. denied* 303 Kan. 1080 (2016). As can be seen from a review of these cases, our court has consistently found that the burden of proof instruction "'does not upset the balance between encouraging jury nullification and forbidding it. . . . [U]nlike the words must, shall, and will, the word should does not express a mandatory, unyielding duty or obligation; instead, it merely denotes the proper course of action and encourages following the advised path.' *Hastings*, 2016 WL 852857, at *4." *Allen*, 52 Kan. App. 2d at 735. Accordingly, we conclude that the district court did not err in instructing the jury either prior to or at the conclusion of the trial.

*Restitution Order*

Dartez also contends that the district court's restitution order of $25,000 was unworkable in light of the length of his sentence and his limited earning power while he is in prison. The review of an order directing a criminal defendant to pay restitution concerning the "'amount of restitution and the manner in which it is made to the aggrieved party'" is reviewed under the abuse of discretion standard. *State v. Shank*, 304 Kan. 89, 93, 369 P.3d 322 (2016). Restitution can be denied if the district court finds that a restitution plan is unworkable. K.S.A. 2016 Supp. 21-6604(b)(1). The burden is on the defendant to present evidence of "compelling circumstances" to prove the restitution plan

is unworkable; defendant's imprisonment also is not sufficient to render restitution unworkable. *State v. Alcala*, 301 Kan. 832, 840, 348 P.3d 570 (2015).

Here, the district court was aware of Dartez' financial circumstances when it ordered restitution. The district court also knew that Dartez was obligated to pay child support and had mental health issues. However, we find nothing in the record to show that Dartez presented compelling circumstances that the order to pay restitution was unworkable. Moreover, the district court did not require Dartez to pay the restitution back in any particular way or at any particular time. Rather, the district court simply entered an order of restitution, which constitutes a civil judgment against Dartez, based on the amount of medical expenses incurred by Holden as a result of the attack on November 13, 2014.

As the State notes, a defendant's imprisonment alone is not sufficient to render a restitution order unworkable. *Alcala*, 201 Kan. at 840; see also *State v. Holt*, 305 Kan. 839, 390 P.3d 1 (2017). While Dartez offered a handful of arguments at sentencing about why he might struggle to pay restitution, he offered no evidence that he, in fact, would be unable to pay the award. As in *Alcala*, the district court in the present case did not impose a requirement that Dartez pay restitution immediately, and in fact, the district court recognized he may not make payments "for a significant period of time." At most, Dartez' arguments suggest he may find it difficult to pay in the future, which is not the same as showing compelling circumstances why a restitution plan is unworkable. Thus, because we find that Dartez failed to meet his burden, we find no abuse of discretion on the part of the district court in ordering restitution in this case.

*Criminal History Score*

In addition, Dartez contends the district court erred in calculating his criminal history score. He argues that the use of his criminal history to calculate his sentence

under the sentencing guidelines is unconstitutional because the State did not prove his past convictions to a jury in this case. See *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Our Supreme Court has rejected this argument. *State v. Ivory*, 273 Kan. 44, 46-47, 41 P.3d 781 (2002) (holding that *Apprendi* does not require proving a prior conviction to a jury beyond a reasonable doubt). Moreover, appellate courts are duty bound to follow Supreme Court precedent absent some indication the court is departing from its previous position. *State v. Singleton*, 33 Kan. App. 2d 478, 488, 104 P.3d 424 (2005). Accordingly, seeing no indication that our Supreme Court is departing from its previous position, Dartez' *Apprendi* challenge fails.

*Issues Raised in Supplemental Brief*

In addition to the issues presented in the appellate brief filed by his attorney, Dartez was allowed to file a supplemental brief in order to raise additional issues. In his supplemental brief, Dartez first contends that the district court erred by including a domestic violence categorization instruction. Because Dartez did not object to this instruction at trial, we review the inclusion of the instruction under a clearly erroneous standard. *Barber*, 302 Kan. at 377. Our analysis for determining whether an instruction is clearly erroneous was set forth above.

Based on our review of the record, we conclude that the district court did not err in giving a domestic violence categorization instruction in this case. In the second amended information, the State alleged that the jury should categorize the crimes committed by Dartez against Holden as domestic violence offenses. K.S.A. 2016 Supp. 22-4616(a) requires that the trier of fact—in this case the jury—determine if a defendant committed a domestic violence offense. We note that the instruction given by the district court followed PIK Crim. 4th 50.110 (2014 Supp.). Thus, it was both legally and factually appropriate for the district court to give a domestic violence categorization instruction based on the evidence presented at trial.

Dartez, in his supplemental brief, next takes issue with the district court's inclusion of some, but not all, lesser included offenses in the jury instructions. As the State points out, however, Dartez specifically told the district court—through his counsel—that he did not want any lesser included instructions offered at trial. As a matter of trial strategy, his attorney advised the district court that his client did not want lesser included instructions to be given because it would be "a release valve in order to find him guilty of a lesser included offense." Accordingly, we conclude that Dartez waived any objection he may have had and is barred from raising this issue on appeal. See *State v. Jones*, 295 Kan. 804, 812-13, 286 P.3d 562 (2012).

Finally, Dartez argues in his supplemental brief that there was possibly juror misconduct at his trial. He did not raise this issue at trial, and issues not raised below generally cannot be raised on appeal. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). Likewise, Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 34) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. In *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), our Supreme Court held that litigants who fail to comply with this rule risk a ruling that the issue will be deemed to be abandoned. See *Godfrey*, 301 Kan. at 1044.

Even if we were to consider this issue on the merits, Dartez has failed to show any wrongdoing by a juror. Moreover, Dartez does not attempt to explain the relationship between the juror he evidently knew and himself. The only factual allegations that Dartez makes is that he had the juror's contact information in his cell phone and that he did not look at the jurors throughout the trial. He also fails to show how knowing the juror prejudiced his rights or affected the verdict rendered by the jury. Therefore, we find there was no reversible issue with juror conduct during his trial.

Affirmed.

15