NOT DESIGNATED FOR PUBLICATION

No. 116,805

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTHONY BOWERS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Jackson District Court; NORBERT C. MAREK JR., judge. Opinion filed November 30, 2018. Reversed and remanded.

*Nicholas David*, of The David Law Office LLC, of Topeka, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN, J., and ROBERT J. FREDERICK, District Judge, assigned.

PER CURIAM:  Anthony Bowers, age 47, was charged with three crimes related to sexual abuse of a 6-year-old child. After his first trial resulted in a hung jury, Bowers was tried again. At the second trial, Bowers objected, both before and during trial, to the testimony of the State's witness who interviewed the child victim. The jury found Bowers guilty. He was sentenced to three consecutive life terms with a mandatory minimum of 25 years pursuant to Jessica's Law.

1

Bowers raises several issues on appeal, but the one we find dispositive is his claim that the district court erred by allowing the State's witness to testify as to her opinions regarding the general behavior of perpetrators of sexual abuse when she was not qualified as an expert witness in the case. Because we agree that the court erred, and we are unable to conclude that the error did not affect the trial's outcome, we are required to reverse Bowers' convictions and remand the case to the district court for further proceedings.

FACTUAL AND PROCEDURAL HISTORY

Bowers was charged in an amended complaint with one count of rape of a child under the age of 14, while he was over the age of 18; one count of aggravated indecent liberties with a child under the age of 14, while he was over the age of 18; and one count of aggravated criminal sodomy with a child under the age of 14, while he was over the age of 18. The first jury trial on the charges resulted in a hung jury. A second jury trial was held on the charges.

According to the testimony at trial, on March 28, 2014, Deputy Travis Spiker was dispatched to deal with a report of alleged sexual abuse. S.B reported to dispatch that her granddaughter, T.S., had been sexually assaulted. Deputy Spiker intended to speak with S.B., gather some general information, and verify that T.S. was safe that evening. After doing that, he intended for a detective to take over the case.

When Deputy Spiker arrived at the residence, S.B. answered the door. Also present were T.S., S.B.'s son, and S.B.'s mother. When S.B. answered the door, she told T.S. to tell Deputy Spiker what had happened. Deputy Spiker's interaction with T.S. was recorded. The recording was later presented to the jury. T.S. told Deputy Spiker that her uncle, Anthony Bowers, had sexually abused her. A more formal interview was scheduled with Jill Shehi-Chapman (Chapman), a forensic interviewer with the LifeHouse Child Advocacy Center.

2

Prior to trial, Bowers filed a motion to prevent Chapman from testifying as an expert. Bowers requested a hearing to determine whether Chapman's testimony would be admissible expert testimony. The State filed a written response which stated that the State did not intend to qualify Chapman as an expert or to have her testify with a professional opinion. A hearing was held on the motion where the State reiterated that Chapman would only be testifying about what happened in her interview with T.S. and nothing else. When the motion was addressed again at a later hearing, the district court ruled that Chapman could testify about her training and if she followed that training. Chapman would not however be allowed to testify as an expert.

Chapman testified at trial about her interview of T.S. The interview was recorded and presented to the jury.

T.S. indicated in her interview that Bowers showed her video pornography and asked her to do the same things to him that she saw on the video. Chapman was asked by the State whether she was familiar with the term grooming. Bowers objected, arguing that Chapman was essentially being asked to testify as an expert without going through the statutorily required expert qualification process. The district court overruled the objection, allowing Chapman to "define the term as she understands it." Chapman testified that grooming was the process of eroding a victim's boundaries in order to desensitize the victim to sexual contact. Chapman then testified about her educational and occupational history. The State asked Chapman a number of questions regarding the behavior of child sexual abusers in general which raised objections from Bowers. He argued the State was attempting to elicit expert opinions from Chapman. The court listened to the parties' arguments regarding the objections before stating: "[I]n general, the questions haven't expressed an opinion from her. She has, rather, related some of her experiences and particularly with regard to her interview techniques."

3

Lieutenant Al Dunn, who was a detective at the time of this case, also participated in the investigation. Lieutenant Dunn executed a search warrant at Bowers' home. Lieutenant Dunn seized Bowers' computer. He also searched for the presence of seminal fluid on the bed where T.S. alleged the abuse occurred. He did not find any seminal fluid, but he was not surprised because T.S. did not say anything about Bower ejaculating. While Bowers' home was being searched, Bowers was detained and taken to the sheriff's office.

Lieutenant Dunn interviewed Bowers at the sheriff's office. The interview was recorded, and the recording was played for the jury. During his interview, Bowers admitted that T.S. may have inadvertently seen pornography on his computer. Lieutenant Dunn searched Bowers' computer and although he recovered a significant amount of pornography, he was unable to find pornography matching T.S.'s description.

T.S. testified at trial that Bowers would come into her room at night. When asked if Bowers ever said why he came into her room, T.S. said, "[H]e lied and said he was going to go look at the sugar gliders but he never said what he was going to do." The sugar gliders lived in a cage in the room that T.S. slept in. T.S. said that instead of looking at the sugar gliders Bowers "touched [her] girly parts" with his hand. T.S. said that Bowers touched her skin. T.S. also said that Bowers would put his mouth on her "girly parts." T.S. also testified that when Bowers used his hand to touch her it hurt because he would push his hand against her. She also said that she looked at pornographic photos while sitting on Bowers lap at his computer.

The State and Bowers presented additional evidence which is, for the most part, not relevant to this appeal.

4

Bowers was found guilty on each count. Bowers filed a motion for departure from sentencing which was denied. He was sentenced to three consecutive life sentences without the possibility of parole for 25 years. Bowers appeals.

Additional facts will be added below as necessary.

ANALYSIS

On appeal, Bowers argues that the district court erred (1) in allowing Chapman to testify about certain opinions; (2) by ruling that the Finding Words protocol was not subject to the standards set out in K.S.A. 2017 Supp. 60-457; (3) by sentencing Bowers illegally; and (4) in denying Bowers' motion for a departure from his sentence.

*The district court erred by allowing Chapman to testify as an expert outside of her qualifications.*

Bowers first argues that the district court erred by allowing Chapman to testify as an expert in certain areas without being qualified as an expert. Specifically, Bowers argues that Chapman improperly offered opinion testimony to show

> "(1) that children are not cognitively or linguistically developed; (2) that certain word formations and ideas are suggestive of being exposed to adult sexual acts inconsistent with normal child development; (3) that it is common for abuse to occur for long periods in the home without disclosure; (4) that abuse is commonly perpetrated by someone the child knows in the home; (5) that abuse frequently occurs while someone else is in the same room as the child; (6) that sex offenders use pornography to desensitize children to the acts they want to perform; and (7) that grooming is a process whereby an offender seeks to erode a victim's boundaries."

5

*Our standard of review is abuse of discretion.*

"Whether a witness, expert or layman, is qualified to testify as to his or her opinion is to be determined by the trial court in the exercise of its discretion." *State v. Sasser*, 305 Kan. 1231, 1243, 391 P.3d 698 (2017). "'A trial court abuses its discretion when the act complained of '(1) is arbitrary, fanciful or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact.'" 305 Kan. at 1243 (quoting *State v. Page*, 303 Kan. 548, 555, 363 P.3d 391 [2015]).

Moreover, the erroneous admission of evidence is subject to review for harmless error under K.S.A. 60-261. *State v. Longstaff*, 296 Kan. 884, 895, 299 P.3d 268 (2013). For an error to be harmless, it must not impact a party's substantial rights, "meaning it will not or did not affect the trial's outcome." *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011). The party benefiting from the error has the burden of proving it harmless. See *State v. Logsdon*, 304 Kan. 3, 39, 371 P.3d 836 (2016).

*The difference between expert testimony and layperson testimony is examined.*

Opinion testimony, from a layperson or expert witness, is governed by K.S.A. 2017 Supp. 60-456, which states:

"(a) If the witness is not testifying as an expert, the testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds: (1) Are rationally based on the perception of the witness; (2) are helpful to a clearer understanding of the testimony of the witness; and (3) are not based on scientific, technical or other specialized knowledge within the scope of subsection (b).

"(b) If scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify thereto in

6

the form of an opinion or otherwise if: (1) The testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has reliably applied the principles and methods to the facts of the case.

"(c) Unless the judge excludes the testimony, the judge shall be deemed to have made the finding requisite to its admission.

"(d) Testimony in the form of opinions or inferences otherwise admissible under this article is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact."

K.S.A. 2017 Supp. 60-457 sets out the process the district court uses to determine whether a witness is qualified to testify in terms of an opinion or inference. Specifically, K.S.A. 2017 Supp. 60-457(b) allows the district court to "hold a pretrial hearing to determine whether the witness qualifies as an expert and whether the witness's testimony satisfies the requirements of subsection (b) of K.S.A. 60-456."

*The arguments of the parties are examined.*

Bowers does not argue the testimony surrounding the interview was admitted in error. But he contends that the more general statements made by Chapman about child abuse victims in general was error. In support of his argument, Bowers relies on the Kansas Supreme Court's decision in *State v. Gaona*, 293 Kan. 930, 270 P.3d 1165 (2012). In *Gaona*, the court held that the State's witness could not testify about child victims of sexual abuse when the State had only demonstrated that the witness was qualified to testify about children who *alleged* sexual abuse. 293 Kan. at 949. In *Gaona*, the State called Kelly Robbins to testify as an expert witness in a child sex case. Robbins was not a licensed mental health professional and had no formal training in psychology, psychiatry, social work, or child development.

7

Robbins testified that she had received training in the Finding Words protocol and was certified to conduct forensic interviews. She also testified about what is often seen in situations involving sexual abuse of children by stating that "'one of the main things is that there's secrecy around child abuse . . . especially child sexual abuse.'" 293 Kan. at 938. She explained that secrecy and fear often means that children do not disclose abuse when it first occurs and that delayed disclosure can extend from weeks to years or the child may not disclose. She also testified that children "display 'a variety of reactions of what they do to survive this abuse.'" 293 Kan. at 938. Robbins also explained that many children who have suffered sexual abuse "'care for their abusers'" which makes it more difficult for the child to disclose. 293 Kan. at 938. Additionally, Robbins testified that coaching a child to produce false allegations of sexual abuse would be difficult and was likely rare. The court noted that Robbins did not give testimony that was specific to the alleged victim in the case. 293 Kan. at 938.

The court summarized Robbins' testimony as having a hybrid purpose. First, it endorsed the Finding Words protocol, which Gaona tried to undercut with his own expert. Second, it served as an "explanation of the common characteristics of child abuse victims that could be argued were consistent with the characteristics of [the victim in the case]." 293 Kan. at 947.

On appeal, Gaona challenged Robbins' qualifications to testify "on the characteristics of children who have been subjected to sexual abuse." 293 Kan. at 940. The court held that Robbins was qualified to testify about Finding Words because she "ha[d] experience and training with Finding Words and, more generally, with forensic interviews of children who have alleged sexual abuse." 293 Kan. at 948. But, "Robbins was not qualified to testify as an expert on the characteristics of victims of child sexual abuse—particularly the phenomenon of delayed disclosure, and her opinions that coaching to produce false allegations would be difficult and was 'probably rare.'" 293 Kan. at 948. The court noted that Robbins had training and experience that exposed her to

children who "*alleged* sexual abuse." 293 Kan. at 948. But there was no information about how often those children's allegations were later confirmed. 293 Kan. at 948. Therefore, the court reasoned that Robbins could not testify about characteristics of children who had suffered sexual abuse. Nor was Robbins qualified to testify about whether any interview subject was a trauma victim or suffering from a "psychological or psychiatric malady." 293 Kan. at 948-49. However, the court found the error was harmless because the evidence was largely corroborated by other testimony. 293 Kan. at 949-50.

In addition to Robbins, the *Gaona* case involved the testimony of Nikki Wiecken, an investigator who interviewed the victim in the case. Wiecken testified at trial that she had completed a Finding Words training program, as well as other training about interviewing children, but that she did not have a college degree. Wiecken had completed about 20 child interviews before the interview in question. Wiecken testified that she sought to get certain details that were hard to coach a child on during the interview. Wiecken also testified about other relevant information she had received from the victim in the case. It seems that Wiecken did not testify as an expert as contemplated by K.S.A. 60-456(b). See 293 Kan. at 933-36. The court noted that Wiecken, unlike Robbins, did not improperly testify about the characteristics of victims of child sexual abuse. 293 Kan. at 948.

In this case, the State argues that Chapman's testimony was more like the testimony of Wiecken and was just based on relevant information she received from T.S. In order to determine which position is correct, we must determine if each statement that Bowers claims is inadmissible is an opinion, and if so did it require Chapman to be a qualified expert to testify to said opinion. See K.S.A. 2017 Supp. 60-456. So we examine each in turn.

9

*We examine each alleged opinion offered by Chapman for its admissibility.*

    *1.  Children are not cognitively or linguistically developed.*

Bowers' first complaint is that Chapman offered an opinion that children are not cognitively or linguistically developed. This complaint likely stems from Chapman's testimony that teenagers are "sometimes chatty. But children who are younger, they're not cognitively or linguistically developed." Testimony that a six-year-old child is not cognitively or linguistically developed is not the type of testimony that would require an expert's presentation, it is common knowledge. A six-year-old's thoughts and language are not as developed as a teenager's or an adult's thoughts and language.

    *2.  Certain words suggest exposure to adult sexual acts inconsistent with normal development.*

The second complaint is that Chapman offered an opinion that certain word formations and ideas are suggestive of being exposed to adult sexual acts inconsistent with normal development. However, Chapman's testimony here goes no further than explaining what she witnessed in the interview. The State asked whether she noted "any wording or sentence formation that caught [her] attention, as far as being maybe . . . unfamiliar normal language for a child that age?" Chapman responded:

> "Yeah. When she was talking about when he was committing oral sex with her. She said that he had used the phrases that you were wet, that he liked this. And then on the other side of that, she would say like, I sawed instead of, I saw. You can see the difference in her development."

The State also asked whether T.S.'s use of the phrase "lick it out" was common in children the same age as T.S. Chapman's response was that it was not common and that

T.S. "could maybe describe the action that was happening but not necessarily understand the behavior behind it." Neither piece of testimony seems to rise to the level that was found inadmissible in *Gaona*. See 293 Kan. at 948-49. Each statement could easily fall under K.S.A. 2017 Supp. 60-456(a). In addition, in his interview, Bowers agreed with Lieutenant Dunn that small children do not typically have the vocabulary to describe sexual acts.

> 3. *It is common for abuse to happen for long periods in the home without disclosure.*

Bowers' third complaint is that Chapman testified it is common for abuse to happen for long periods in the home without disclosure. We were unable to find anything in Chapman's direct examination that pertained to abuse occurring for long periods of time without disclosure. Chapman did testify that abuse could occur over a long period of time in the home, but the issue of disclosure was never brought up in that context. That issue is addressed in Bowers' fourth complaint. If a statement relating to disclosure exists in the record, the failure to provide a correct citation violates Supreme Court Rule 6.02(a)(4) (2018 Kan. S. Ct. R. 34).

> 4. *Abuse is commonly perpetrated by someone the child knows in the home.*

Bowers' fourth complaint is that Chapman testified that abuse is commonly perpetrated by someone the child knows in the home. This argument seems to be based on Chapman's response to the question of whether, based on her experience, it was uncommon for sexual abuse to be perpetrated by someone the child knows in his or her home. Chapman responded:

11

"In my experience, of the kids that I have forensically interviewed, it is not uncommon for abuse to happen in the home. It is not uncommon for abuse to continually happen or a pattern where the same abuse continues to happen over time. And, specifically, the LifeHouse—the statistics at LifeHouse for the children that come to LifeHouse, our numbers are closer to 96, 97, 98 percent that the offender is somebody in the child's home, or close to the child's family, or is in the child's life on purpose."

The situation here is similar to the inadmissible testimony in *Gaona*. Chapman, like Robbins, undoubtedly had experience with interviews of children alleging sexual abuse. See 293 Kan. at 948-49. But, like in *Gaona*, the State did not offer any proof that the allegations made by previous interviewees was substantiated by "other evidence and/or later examinations or proceedings." See 293 Kan. at 948. Chapman's testimony implied that the information she received from an alleged child victim resulted in a later fact-finding that proved the truth of the alleged victim's assertion. The district court abused its discretion in allowing this testimony because the manner in which it was offered did not comply with K.S.A. 60-456(b). See 293 Kan. at 949.

> 5. *Abuse frequently occurs while someone else is in the same room as the child.*

Bowers' fifth complaint is that Chapman testified that abuse frequently occurs while someone else is in the same room as the child. The complaint seems to be based on Chapman's testimony that other children she had interviewed had reported that an alleged abuser would do slight touches on the victim in the presence of others and then call the touch an accident.

But, like in *Gaona*, the State did not offer any proof that the allegations made by previous interviewees was substantiated by "other evidence and/or later examinations or proceedings." See 293 Kan. at 948. Chapman's testimony implied that the information she received from an alleged child victim resulted in a later fact-finding that proved the truth

12

of the alleged victim's assertion. The district court abused its discretion in allowing this testimony because the manner in which it was offered did not comply with K.S.A. 60-456(b). See 293 Kan. at 949.

### 6. Sex offenders use pornography to desensitize children to sexual acts.

Bowers' sixth complaint is that Chapman testified that sex offenders use pornography to desensitize children to sexual acts. Chapman testified that she heard from other children that she had interviewed, as well as T.S., that "offenders will use pornography to desensitize the child to whatever acts they are committing, whatever acts they are interested in committing."

Yet again, like in *Gaona*, the State did not offer any proof to substantiate this statement, which was clearly offered as an opinion. There was also no evidence that when previous interviewees alleged exposure to pornography, the suspect was later found to have been guilty of perpetrating abuse on the victim and had used pornography to desensitize the victim. See 293 Kan. at 948-49. This may be a true statement, but it would require an expert witness to testify to such a conclusion. Accordingly, again, the district court abused its discretion in allowing this testimony because the manner in which it was offered did not comply with K.S.A. 60-456(b). See 293 Kan. at 949.

### 7. Grooming is a process an offender uses to erode a victim's boundaries.

Finally, Bowers' seventh complaint, closely related to the previous complaint, is that Chapman testified that grooming is a process an offender uses to erode a victim's boundaries. The State asked Chapman how she defined grooming. Chapman replied that grooming is a "process of eroding a victim's boundaries to physical touch and desensitizing them to sexual issues. If somebody would want to cultivate a trust with a victim and then gradually introduce sexual behavior until it . . . reaches a point where it

13

becomes possible to perpetrate a crime against them." Chapman's explanation of grooming rises to the level that was found inadmissible in *Gaona*. See 293 Kan. at 948-49. The Kansas Supreme Court has noted that "grooming evidence typically requires expert testimony." *State v. Akins*, 298 Kan. 592, 604, 315 P.3d 868 (2014) (addressing prosecutor's comments regarding grooming during opening statements and closing arguments).

Ultimately, some of Chapman's testimony was admitted in error. As stated above, some of the testimony went beyond what the Kansas Supreme Court found permissible in *Gaona*. Overall, Chapman's testimony was more similar to Robbins' than Wiecken's testimony. See 293 Kan. at 935-39. In *Gaona*, Wiecken only testified about her interview with the victim. Chapman could properly testify about her actions in this case or about opinions that were based on her perceptions that were helpful to understand her testimony and were not based on scientific, technical, or other specialized knowledge. See K.S.A. 2017 Supp. 60-456(a); *Sasser*, 305 Kan. at 1245 (explaining that an opinion can be characterized as lay when the average person in the witness' place could provide the testimony). But going further than that was not permissible unless she qualified as an expert, which the judge had already found she was not. See *Gaona*, 293 Kan. at 948-49. Given that the admission of the testimony was error, we turn to the next stage of our analysis—whether it was harmless.

*The State has failed to establish that the error was harmless.*

The erroneous admission of evidence is subject to review for harmless error under K.S.A. 2017 Supp. 60-261. See *Longstaff*, 296 Kan. at 895. To find the errors harmless the court must find that there is a reasonable probability that the errors did not affect the outcome of the trial. *Ward*, 292 Kan. 541, Syl. ¶ 6.

14

The State argues that if there was error it was harmless because, like in *Gaona*, the testimony was largely corroborated by other witnesses. See *Gaona*, 293 Kan. at 949-50. In addition, the State argues that Bowers presented an expert to dispute any testimony that was admitted in error. Finally, the State argues that this case ultimately rested on T.S.'s credibility and that Chapman's testimony did not bolster T.S.'s credibility.

The State points to Lieutenant Dunn's testimony, which was not objected to, that it was not uncommon for abuse to occur when other people are in the same home or room as corroborating Chapman's testimony. However, that testimony does not corroborate *all* of Chapman's testimony that was allowed in error, so it is not sufficient by itself to lead us to make an ultimate conclusion of harmlessness.

The State also argues that Bowers' own expert testified regarding investigations in sexual assault cases and that testimony mitigated any possible error in admitting Chapman's testimony. However, none of Bowers' expert's testimony addresses the inadmissible testimony from Chapman. Instead, Bowers' expert focused on evidence collection possibilities in a sexual assault medical exam to address what Bowers contended was a shoddy investigation.

Moreover, we find the State's argument that none of Chapman's testimony bolstered T.S.'s credibility to be unpersuasive. Chapman testified that she had previously interviewed 200 children at the time she interviewed T.S. She also testified about her prior training and education as it related to her ability to interview children. Her testimony that other child sex abuse victims had reported circumstances like T.S.'s allegations certainly served to bolster T.S.'s testimony and interviews.

Finally, the State supports its position that any admission of Chapman's testimony was harmless because the State "did not mention or rely on any of Chapman's testimony on these specific topics in closing argument." The State may not have mentioned any of

15

Chapman's inadmissible testimony in closing arguments, but that alone does not make the admission of the testimony harmless. We presume the jury followed the instructions in the case. See *State v. Rice*, 273 Kan. 870, 873, 46 P.3d 1155 (2002). The jury was instructed to "consider and weigh everything admitted into evidence. This includes testimony of witnesses . . . ." The inadmissible testimony was part of the testimony it was instructed to consider.

The burden to show the testimony was harmless rests on the State. See *Logsdon*, 304 Kan. at 39. This case involved an unequivocal denial by Bower that the alleged acts ever took place and no physical evidence to support T.S.'s allegations, through no fault of T.S. The jury was clearly entitled to listen to T.S. and determine if it believed her as opposed to Bower, who it heard through his recorded interview with police. And if the State had not been allowed to bolster T.S.'s testimony through general statements made by an unqualified witness, the jury may have reached the same verdict. But, the State has provided no caselaw supporting its arguments and the arguments themselves fail to sufficiently address the error of admitting Chapman's testimony. Accordingly, the State has failed to meet its burden to show that the error was harmless. Because of the State's failure, we are unable to find that there is a reasonable probability that the errors did not affect the outcome of the trial. *Ward*, 292 Kan. 541, Syl. ¶ 6.

We pause to note that we clearly understand the significance of our ruling today. Our role at this stage of the proceedings is not to decide whether Bowers committed the crimes for which he was convicted, but whether errors committed by the court denied him a fair trial. The stakes for Bowers are certainly high—the rest of his life in prison. We also understand that the result in this case may seem unjust, especially to T.S. and her family. But as Judge Leben so aptly said in *State v. Lacy*, 56 Kan. App. 2d 327, 334, 429 P.3d 245 (2018), *petition for rev. filed* September 24, 2018:

16

"Our justice system simply has rules that, by design, sometimes prevent the correction of errors. That's in part because 'concern about the injustice that results from the conviction of an innocent person has long been at the core of our criminal justice system.' *Schlup v. Delo*, 513 U.S. 298, 325, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). And it reflects 'a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free.' *In re Winship*, 397 U.S. 358, 372, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) (Harlan, J., concurring); see *Schlup*, 513 U.S. at 325. On balance, these rules serve us well."

We believe that based on the admission of testimony from an unqualified witness that bolstered the testimony of the victim, reversal is necessary. Accordingly, we reverse Bowers' convictions and remand this case for further proceedings.

Because we find reversible error, there is no need to address the other alleged errors raised by Bowers.

Reversed and remanded.